**Alan J. TRUELOVE, Plaintiff,**

v.

**TRUSTEES OF the UNIVERSITY OF the DISTRICT OF COLUMBIA, Defendant.**

**Civ. A. No. 89–2239–LFO.**

United States District Court, District of Columbia.

May 3, 1990.

Dismissed with Prejudice July 11, 1990.

Alan J. Truelove, Falls Church, Fla., pro se.

Rachel Evans, Asst. Corp. Counsel, Washington, D.C., for defendant.

## MEMORANDUM

OBERDORFER, District Judge.

In this action, plaintiff, suing *pro se*, charges that defendant has discriminated against him on the basis of race and national origin.[1] Plaintiff, a white male from England, is a full professor at the University of the District of Columbia. He asserts that defendant failed to evaluate him in a manner comparable to similarly situated black or Arab faculty members and that defendant has retaliated against him for asserting his rights to be free from discrimination. Defendant has filed two motions that are now pending: The first, filed on December 15, 1989, moves for dismissal

---

**1.** Plaintiff does not raise national origin as an alternative basis for discrimination in his complaint. However, at his January 3, 1990 deposition, he presented it as a cause of the University's treatment. Deposition of Alan J. Truelove, Jan. 3, 1990, at 9–10. Because discrimination on the basis of national origin is sufficiently "like and related" to issues specified in plain-

tiff's EEOC charge and complaint, *see Sanchez v. Standard Brands, Inc.,* 431 F.2d 455 (5th Cir. 1970); *Macklin v. Spector Freight Systems, Inc.,* 478 F.2d 979 (D.C.Cir.1973), and because of the leniency accorded *pro se* litigants, *see Ham v. Smith,* 653 F.2d 628 (D.C.Cir.1981), the complaint will be treated as if it explicitly claims discrimination on the basis of national origin.

of Count I of plaintiff's complaint, which charges that defendant's actions violate 42 U.S.C. § 1981. The second, filed on January 22, 1990, moves for dismissal or, alternatively, summary judgment on Count II of plaintiff's complaint, which charges that defendant's actions violate Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* For the reasons stated in this Memorandum, an accompanying Order will grant defendant's motion to dismiss Count I of plaintiff's complaint and grant in part and deny in part defendant's motion to dismiss or, alternatively, for summary judgment on Count II of plaintiff's complaint.

## I.

### A.

The following facts are not in dispute. Plaintiff is a full professor of the Computer Information and Systems Science Department ("CISS Department") of defendant's College of Business and Public Management. Complaint ¶ 7; Defendant's Motion to Dismiss, or in the Alternative, for Summary Judgment (Jan. 22, 1990) [hereinafter "Motion to Dismiss II"] at 4. Each year, an evaluation of all members of the CISS Department is conducted by its Department Evaluation and Promotion Committee ("Evaluation Committee") and the Department Chair. Complaint ¶ 12; Motion to Dismiss II at 5. For the 1986–87 academic year, the Evaluation Committee gave plaintiff an overall rating of "Unsatisfactory." Complaint ¶ 30; Motion to Dismiss II at 6. Plaintiff signed the evaluation form on April 6, 1988, indicating that plaintiff had notice of the "unsatisfactory" rating. Defendant's Motion to Dismiss, Exh. D at 3. Plaintiff did not directly appeal this evaluation according to the provisions established by the Third Master Agreement which governs relationships between the University and the faculty. *See* Motion to Dismiss II, Exh. C. at 29–31; Plaintiff's Amended Opposition at 5. Nor did he file a formal grievance with defendant regarding the evaluation process for more than 18 months. Plaintiff's Amended Opposition to Defendant's Motion to Dis-

miss or in the Alternative for Summary Judgment (Apr. 10, 1990) [hereinafter "Amended Opposition II"] at 6. However, he did complain orally and in writing to members of defendant's administration. Complaint ¶ 32. Subsequently, on January 30, 1989, plaintiff received a letter from Rafael Cortada, the president of the university, stating that

> [y]ou are to meet with your Dean to develop a specific plan to correct [deficiencies resulting in the "Unsatisfactory" evaluation]. If your evaluation for the 1988–89 academic year is "unsatisfactory", appropriate adverse action will be recommended under the provisions of the Master Agreement.

Complaint, Exh. P–3. No evaluation was conducted for the 1987–88 academic year. However, plaintiff received a satisfactory rating for the 1988–89 academic year. *See* Amended Opposition II at 3 n. 1.

In addition to receiving an "unsatisfactory" rating for the 1986–87 academic year, plaintiff has repeatedly been denied sabbatical leaves by the University. Complaint ¶ 41; Motion to Dismiss II at 8, Exh. G. Plaintiff applied for sabbatical leaves for the past four years, most recently for a semester of the 1989–90 academic year. Complaint ¶ 41; Motion to Dismiss II at 8, Exh. G. However, all his applications were rejected by the University–Wide Sabbatical Leave Review Committee ("Sabbatical Leave Committee"). Complaint ¶ 41; Motion to Dismiss II at 8.

Plaintiff contends that both the "unsatisfactory" rating by the Evaluation Committee and the rejections of his applications for sabbatical leave by the Sabbatical Leave Committee were the product of discrimination on the basis of race and national origin by black and Arab faculty members. Plaintiff asserts, moreover, that these actions were also the product of unlawful retaliation resulting from his testimony as a witness in another discrimination suit against defendant, *Bachman v. District of Columbia,* No. 86–0074 (D.D.C. file Jan. 13, 1986), his opposition to granting tenure to an allegedly unqualified black professor, and his opposition to the dismis-

sal for discriminatory reasons of a white professor. Complaint ¶¶ 37, 39, 40, 55. Defendant disputes these assertions, claiming that plaintiff's evaluation and the rejections of his applications for sabbatical leave were based on nondiscriminatory reasons.

## II.

Defendant's first motion to dismiss, filed on December 15, 1989, asserts that Count I of the complaint, alleging violations of 42 U.S.C. § 1981, must be dismissed. According to defendant, plaintiff's § 1981 claims fail because plaintiff asserts discrimination neither in the making of plaintiff's employment contract nor in its enforcement in the judicial process. Thus, defendant argues, the claims do not fall within the scope of § 1981 protection elucidated by the Supreme Court in *Patterson v. McLean Credit Union*, —— U.S. ——, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989). In that case, the Court held that although § 1981 applies to the formation of employment contracts, it does not extend to problems that may arise from the conditions of continuing employment. Plaintiff did not oppose defendant's motion to dismiss this Count. Accordingly, the motion will be treated as conceded and the accompanying Order will dismiss Count I of the complaint.

## III.

Also pending is defendant's motion to dismiss, or, in the alternative, for summary judgment on Count II of plaintiff's complaint, filed on January 22, 1990. Count II, which asserts that defendant's actions violated Title VII, actually presents three different claims: 1. that the 1986–87 evaluation was conducted in a discriminatory manner; 2. that the denials of plaintiff's applications for sabbatical leave were discriminatory; and 3. that adverse actions against plaintiff were the product of retaliation. Defendant contends each of these

claims must be dismissed. Plaintiff opposes this motion.

As the resolution of each of the three claims requires consideration of matters outside the pleadings presented by the parties, defendant's motion must "be treated as one for summary judgment and disposed of as provided in Rule 56." Fed.R.Civ.P. 12(b)(6); *see also Shehadeh v. Chesapeake & Potomac Tel. Co.*, 595 F.2d 711, 719 n. 41 (D.C.Cir.1978). Under this standard, judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In assessing whether the showing made is sufficient, the court must determine "not whether ... the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).

### A.

Defendant first argues that the statutory time limit on Title VII claims bars review of plaintiff's 1986–87 evaluation. Defendant contends that because plaintiff signed the evaluation form indicating that he had received notice of the "unsatisfactory" rating on April 6, 1988, and then did not file his charge of discrimination with the Equal Employment Opportunity Commission until either March 24, 1989 or March 29, 1989,[2] the charge was filed in an untimely manner as to this issue. Plaintiff disputes defendant's contention that his charge was not timely filed by arguing that the time period should be deemed to commence later than on the date he learned of the "unsatisfactory" rating. He advances two alternative dates from which, he contends, the limita-

---

**2.** A discrepancy exists between the parties' accounts of when plaintiff filed his charge: plaintiff states that it was filed on March 24, 1990; defendant states that it was filed on March 29, 1990. *Compare* Complaint ¶ 50, *with* Defendant Motion to Dismiss II, at 7. As the 5–day differ-

ence between the dates alleged is irrelevant for the purposes of defendant's motions, this Memorandum will, for purposes of convenience, hereinafter treat the charge as if it had been filed on March 24, 1990.

tion period should be deemed to run: 1. November, 1988, when he discussed the evaluation with a member of defendant's administration and thereby allegedly became aware that the administration was reviewing the evaluation decision; and 2. January 30, 1989, when he received the letter from President Cortada and thereby allegedly learned that the administration's review had concluded. Plaintiff also appears to suggest that the Evaluation Committee decision is reviewable as part of a pattern of "continuing discrimination."

Title VII requires aggrieved persons to file a charge with the Equal Employment Opportunity Commission (EEOC) "within one hundred and eighty days after the alleged unlawful employment practice occurred ...," unless a charge is instituted within 300 days with a state or local agency that has a work sharing agreement with the EEOC. 42 U.S.C. § 2000e–5(e). The District of Columbia has such a work sharing agreement. *See* 29 C.F.R. § 1601.74. Therefore the 300–day limit applies in this case.

■ In determining when the "alleged unlawful employment practice" occurred that would trigger the limitations period, the Supreme Court has clearly stated that "the pendency of a grievance or some other method of collateral review of an employment decision, does not toll the running of the limitations period. The existence of careful procedures to assure fairness in the [employment] decision should not obscure the principle that limitations periods normally commence when the employer's decision is made." *Delaware State College v. Ricks,* 449 U.S. 250, 261, 101 S.Ct. 498, 505, 66 L.Ed.2d 431 (1980) (citations omitted). In the instant case, plaintiff declined to file a direct appeal of his evaluation pursuant to the procedures set forth in the University's Third Master Agreement. *See* Plaintiff's Amended Opposition at 5–6; Motion to Dismiss II, Exh. C, at 29–31. Instead, he only later pursued other routes to gain review of the evaluation process. Plaintiff's Amended Opposition at 5–6. Because any review instigated by his actions would be collateral and conducted outside the for-

mal appeals process, it would not toll the commencement of the limitations period.

■ Neither would the warning from President Cortada that plaintiff's employment might be terminated in the event of future unsatisfactory evaluations permit review of the evaluation on the ground that Cortada's warning constituted a subsequent act of discrimination in connection with the evaluation process. The Supreme Court has firmly distinguished between the date on which a practice was committed and the date on which the inevitable consequences of the practice are realized. *Delaware State College v. Ricks,* 449 U.S. 250, 259, 101 S.Ct. 498, 504, 66 L.Ed.2d 431 (1980) (quoting 42 U.S.C. § 2000e–5). Thus, in *Delaware State College,* the Supreme Court found the limitations period in an employment discrimination action commenced when the College notified the applicant that he had been denied tenure rather than when the College released him from employment because

> termination of employment at Delaware State is a delayed, but inevitable, consequence of the denial of tenure. In order for the limitations periods to commence with the date of discharge, Ricks would have had to allege and prove that the manner in which his employment was terminated differed discriminatorily from the manner in which the College terminated other professors who also had been denied tenure.

*Id.* 101 S.Ct. at 504. No evidence in the record indicates that President Cortada's letter was anything other than a routine letter sent to all those faculty members who received "unsatisfactory" ratings. Thus, only the Evaluations Committee decision and not the letter from Cortada may be treated as an arguably discriminatory practice that is reviewable under Title VII.

■ Finally, the claim that the 1986–87 evaluation is reviewable as part of a continuing pattern of discrimination also fails. As our Circuit Court has stated, a series of allegedly discriminatory actions against the same employee, even with the same alleged motive, such as race discrimination, is not enough to establish a continuing pattern of

discrimination. *Milton v. Weinberger,* 645 F.2d 1070, 1072 n. 3, 1077 (D.C.Cir.1981). To state a claim of continuing discrimination, plaintiff must allege an unlawful program of discrimination, rather than specific, perhaps unrelated, instances of it. *Id.* Here, plaintiff fails to proffer evidence establishing that any such program of unlawful discrimination existed. In particular, he fails to proffer any evidence of a link between his unfavorable evaluation by the Evaluations Committee and his rejection by the University–Wide Sabbatical Leave Review Committee or any other unfavorable action by the University against him. *See Stoller v. Marsh,* 682 F.2d 971 (D.C.Cir. 1982). As the period of limitations for filing a charge must be deemed to have commenced on April 6, 1988, the date plaintiff was given notice of the evaluation committee's decision, plaintiff's claim of discrimination based on the 1986–87 evaluation must be dismissed as untimely.

### B.

Defendant next argues that plaintiff cannot proffer sufficient evidence to support his claim that defendant's rejection of plaintiff's applications for sabbatical leave was discriminatory. Although plaintiff sues for denial of sabbatical leaves since 1986, defendant asserts that only plaintiff's application for sabbatical leave for the 1989–90 academic year is not time barred. Plaintiff has not opposed this claim. Accordingly, only the application for the 1989–90 year will be considered.

*McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973), establishes a tripartite framework for consideration of disparate treatment claims such as plaintiff's. Under this framework, the plaintiff must first set forth a prima facie case that creates a presumption of illegal discrimination. The burden then shifts "to the employer to articulate some legitimate, nondiscriminatory reason" for the adverse action in order to rebut the inference of discrimination. *Id.* at 802, 93 S.Ct. at 1824. For this purpose, the defendant "need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the

defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 255, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981). At the third stage, the plaintiff may still prevail by establishing that the defendant's proffered justification was merely a pretext for discrimination. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824.

■ There can be little dispute that both parties meet their initial burdens. Plaintiff proffers evidence demonstrating that he is a white man of British origin; he applied for sabbatical leave and was rejected; he met the qualifications for receiving sabbatical leaves and others who were not white or British were granted sabbatical leave. Under *McDonnell Douglas,* the facts set forth by plaintiff are sufficient to make a prima facie case. By the same token, defendant successfully articulates a legitimate, nondiscriminatory reason for rejecting plaintiff's application for sabbatical leave, namely, that the application was too verbose and confusing. *See* Motion to Dismiss II, Exh. G.

■ At the third stage, plaintiff proffers evidence in support of his claim that defendant's articulated reason for rejecting his application for sabbatical leave was merely a pretext for discrimination. Plaintiff points out that the Master Agreement provides that "[a]pplicants with the longest period of service since the last sabbatical shall be given priority consideration among the applicants for sabbaticals of equal duration," Memorandum of Points and Authorities in Support of Plaintiff's Opposition to Defendant's Motion to Dismiss (Feb. 13, 1990), at 8, and that he has taught for 15 years without a sabbatical. *Id.* Plaintiff also contends that if defendant produced the cover sheets to the sabbatical applications of all faculty members he would be able to demonstrate that others awarded sabbaticals for the 1989–90 academic year served for a shorter period of time since their last sabbatical. *Id.* Defendant, in response, proffers neither any evidence

that plaintiff was granted priority consideration over others with shorter periods of service since their last sabbatical nor any relevant explanation of the sabbatical review process that would explain selection on the basis of merit over length of service. Consequently, plaintiff presents a genuine dispute of material fact regarding whether defendant's stated rationale for denying his application for sabbatical leave was mere pretext. Defendant's motion to dismiss this claim must therefore be denied.

## C.

Finally, defendant moves for dismissal of plaintiff's claims of retaliation. Although the substance of these claims are not completely clear from his complaint, it appears that plaintiff asserts that defendant retaliated against him for three different actions: 1. his refusal to help discharge Dr. Kucera, a white male, in October, 1986; 2. his opposition to granting tenure to an allegedly unqualified black woman when he was a member of the Promotions Committee in January through April of 1987; and 3. his testimony in *Bachman v. District of Columbia*, 86–0074 (D.D.C. filed Jan. 13, 1986), in August, 1988. These acts, he argues, resulted in several adverse actions against him: 1. his replacement on the Promotions Committee for the academic year beginning in August, 1987; 2. the rejections of his applications for sabbatical leave; and 3. his poor evaluation for the 1986–87 academic year.

▆ Defendant first argues that this cause of action should be dismissed because the alleged acts of retaliation occurred before plaintiff filed his charge of discrimination with the EEOC. However, Title VII's protects from retaliation a far broader scope of activities than the simple filing of an EEOC charge. Section 704(a) of Title VII covers those who "oppose[ ] any practice made an unlawful employment practice by this title" and those who "charge, testif[y], assist[ ], or participate[ ] in any manner in an investigation, proceeding, or hearing under this title." § 704(a). Thus Title VII's protection would extend to retaliation stemming from plaintiff's testimony in federal court and his informal opposition to allegedly discriminatory employment practices of defendant. *See, e.g., Williams v. Boorstin*, 663 F.2d 109, 115 (D.C.Cir.1980).

However, plaintiff's failure to file his EEOC charge until March 24, 1989, raises problems of timeliness. As noted above, plaintiff failed to file his charge within the period required to challenge his 1986–87 evaluation. Moreover, the charge was filed in insufficient time to challenge his replacement on the Promotions Committee in August, 1987, which occurred more than 18 months before the filing of the charge. Thus, only plaintiff's claim that he was denied sabbatical leave during the 1989–90 academic year on the ground of retaliation may be considered.

▆ As with plaintiff's claim of disparate treatment, the framework of *McDonnell Douglas* applies to claims of retaliation. *McKenna v. Weinberger*, 729 F.2d 783, 790 (D.C.Cir.1984). Both parties again meet their initial burdens under this framework. Plaintiff proffers evidence that he was engaged in statutorily protected activity, for example, by testifying against defendant in a discrimination case; that he was qualified for a sabbatical; and that he applied and was rejected for a sabbatical. By doing so, plaintiff "establish[es] facts adequate to permit an inference of retaliatory motive," and therefore establishes a prima facie case. *Id.* at 790. Defendant also meets its initial burden by asserting that it rejected plaintiff's application because it was too verbose and confusing.

At the third stage, plaintiff also presents sufficient evidence of pretext to withstand a motion for summary judgment. As stated *supra* at Part IIIB, he proffers evidence of his 15 years of service without sabbatical leave, the Master Agreement provision that applicants for sabbatical leave with the longest period of service will be given priority consideration, and contends that those who received sabbaticals had served for a lesser period. Defendant proffers neither any evidence that plaintiff was granted priority consideration over others

**314**

with shorter periods of service nor any relevant explanation of the sabbatical leave review process that would account for selection on the basis of merit over length of service. As a dispute of material fact exists regarding whether defendant's explanation for rejecting plaintiff's sabbatical leave application constitutes pretext, defendant's motion to dismiss this claim must be denied.

### IV.

Accordingly, the Accompanying Order will grant defendant's motion to dismiss Count I of the complaint and will grant in part and deny in part defendant's motion for dismissal or, in the alternative, summary judgment on Count II of the complaint.