**Kenneth L. CONES, Plaintiff,**

v.

**Donna E. SHALALA, Secretary, Department of Health and Human Services, Defendant.**

**Civil No. 96–701(CRR).**

United States District Court, District of Columbia.

Nov. 25, 1996.

Roland D. Schroeder, William D. Hopkins, and Liza M. Murphy, Ross, Dixon & Masback, L.L.P., Washington, DC, for Plaintiff.

Diane M. Sullivan and Nancy R. Page, Assistant United States Attorneys, along with whom Eric H. Holder, Jr., Washington, DC, appeared on the briefs, for Defendant.

## INTRODUCTION

CHARLES R. RICHEY, District Judge.

Before the Court in the above-captioned case are the defendant's Motion to Dismiss or, in the alternative, for Summary Judgment and the plaintiff's Opposition thereto. The Court heard oral arguments at a pre-trial conference on November 14, 1996. Based on the arguments, the pleadings, the entire record herein, and the law applicable thereto, the Court granted summary judgment for the defendant.[1] The Court shall more particularly set forth the basis for its ruling in the present Memorandum Opinion.

## BACKGROUND

The plaintiff Kenneth L. Cones brought this action against the defendant Donna E. Shalala in her official capacity as Secretary

---

1. Because matters outside the pleadings were presented and considered, the Court treated the government's Motion to Dismiss as one for Summary Judgment under Rule 56. Fed.R.Civ.P. 12(b).

or the Department of Health & Human Services ("HHS"), under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"). Compl. ¶ 1. The plaintiff, a GM–14 Management Analyst in the Division of Special Programs Coordination ("DSPC"), Administrative Services Center ("ASC"), Office of the Assistant Secretary for Management and Budget ("ASMB"), alleges that he has been subjected to illegal racial discrimination and retaliation, primarily through the actions of Elizabeth James, the Principal Deputy Assistant Secretary for Management and Budget. *Id.* ¶ 2.

In particular, the plaintiff's complaint is based on occurrences between 1989 and 1993. The plaintiff alleges that he was subjected to discrimination when he was not selected for positions in June 1989, in July 1990, in April 1991, and in November 1991. He further alleges that in July 1990 he was discouraged from applying for a position by his supervisor and that in October 1991 he was denied the opportunity for a career enhancing assignment. Furthermore, the plaintiff alleges that he was discriminated against in January 1993 and was subjected to reprisal for filing an EEO Complaint when he was denied the position of Director of the Division of Special Programs Coordination, GM–15. *see* Compl. ¶ 17–29.

As more particularly set forth below, the plaintiff's claims of race discrimination based on incidents occurring prior to December 15, 1992 are barred because the plaintiff failed to timely contact an EEO Counselor. As to the remaining claims of discrimination and retaliation, the plaintiff cannot demonstrate that he can sustain his burden of proof at trial.

## DISCUSSION

### I. THERE ARE NO GENUINE ISSUES OF MATERIAL FACT AND THE DEFENDANT IS ENTITLED TO JUDGMENT AS A MATTER OF LAW.

The Court must grant summary judgment for the moving party if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986) (citing Fed.R.Civ.P. 1).

An issue must be both genuine and material to preclude the entry of summary judgment. *Anderson,* 477 U.S. at 247–48, 106 S.Ct. at 2509–10. An issue is genuine if there is sufficient evidence to support a rational finding either way. In making this determination, the non-movant's evidence "is to be believed, and all justifiable inferences are to be drawn in [their] favor." *Id.* at 255, 106 S.Ct. at 2513. A issue is material if it "might affect the outcome of the suit." *Id.* at 248, 106 S.Ct. at 2510.

In ruling on a motion for summary judgment, the Court must "view the evidence presented through the prism of the substantive evidentiary burden" that would apply at the trial on the merits. *Id.* at 252, 254, 106 S.Ct. at 2512, 2513. The judge's inquiry asks "whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed." *Id.* at 252, 106 S.Ct. at 2512 (citation omitted). The judge must "bear in mind the actual quantum and quality of proof necessary to support [a verdict]." *Id.* at 254, 106 S.Ct. at 2513.

The burden is on the movant to show that there is no genuine issue of material fact and that the opposing party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552. When the moving party has met its burden, the burden shifts to the non-movant to "come forward with

'specific facts showing that there is a genuine issue for trial.'" *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356. The non-movant may not rest upon "mere allegations or denials," or on the hopes that at trial evidence put on by the moving party may simply be disbelieved, but must set forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e).

### A. The Plaintiff's Discrimination Claims Based On Occurrences That Predate December 15, 1992 Are Barred Because The Plaintiff Failed to Timely File an EEO Complaint.

█ "[A] timely administrative charge is a prerequisite to initiation of a Title VII action in the District Court." *Jarrell v. United States Postal Serv.,* 753 F.2d 1088, 1091 (D.C.Cir.1985) (citing *Brown v. General Servs. Admin.,* 425 U.S. 820, 832–33, 96 S.Ct. 1961, 1967–68, 48 L.Ed.2d 402 (1976)). The governing regulations impose time requirements to file an EEO complaint, stating that the aggrieved person must initiate contact with an EEO Counselor within 45 days of the date of the matter alleged to be discriminatory. 29 C.F.R. § 1614.105(a)(1).[2]

The plaintiff first contacted an EEO Counselor on January 29, 1993. Thus, the governing regulations render untimely an EEO complaint based on any allegedly discriminatory event that the plaintiff knew or reasonably should have known about before December 15, 1992.

The plaintiff raises claims of discrimination based on seven events that occurred before December 15, 1992. The plaintiff asserts, however, that the untimeliness of his EEO complaint is not a bar to suit, based either on the "continuing violation doctrine" or on the "equitable tolling doctrine."

#### 1. *There is no basis here to toll the time requirements based on the "Continuing Violation Doctrine."*

█ A plaintiff may avoid the time requirements for filing an EEO complaint if he can show that there was a "continuing viola-

tion," or series of related actions, one of which falls within the limitations period. *Valentino v. United States Postal Serv.,* 674 F.2d 56, 65 (D.C.Cir.1982). However, the theory of continuing violation must be "guardedly employed because within it are the seeds of the destruction of statutes of limitation in Title VII cases." *Abrams v. Baylor College of Medicine,* 805 F.2d 528, 533 (5th Cir.1986). Thus, the plaintiff must show the acts are interrelated and form a common nexus or theme. *See Truelove v. Trustees of the Univ. of D.C.,* 744 F.Supp. 307, 312 (D.D.C.1990) (The plaintiff must show "an unlawful program of discrimination, rather than specific, perhaps unrelated, instances of it.").

█ The plaintiff raises seven allegations that occurred before December 15, 1992: (1) in June 1989, the plaintiff was not selected for the GM–14 position of Special Assistant to the Deputy Assistant Secretary for Management and Acquisition; instead, a white female was selected; (2) in July 1990, the plaintiff alleges that he was discouraged from applying for the GM–15 position of the Director of the Division of Buildings Management and Telecommunications by his supervisor, John Hopkins, Director of Office of Management Operations; a white male was selected; (3) in July 1990, the plaintiff was not selected for the GM–15 position of Deputy Director of Management Operations and Administrative Services; instead, a white female was selected; (4) in April 1991, the plaintiff was not selected for the GM–15 position of Director of the Division of Buildings Management and Telecommunications; instead, a white male was selected; (5) on August 1, 1991, the plaintiff was reassigned from the GM–14 position of Special Assistant to the Acting Director of the Office of Management Operations, to a GM–14 management analyst position in DSPC; (6) in October 1991, the plaintiff alleges that he was denied the opportunity to be selected for a career development assignment in the Immediate Office of the Assistant Secretary for Management and Budget; thereafter, whites

2. On October 1, 1992, EEOC regulations at 29 C.F.R. Part 1614 superseded those found at 29 C.F.R. Part 1613, extending the time period for

contacting an EEO counselor from thirty (30) to forty-five (45) days. 29 C.F.R. § 1614.105(a)(1).

were afforded such an opportunity; and (7) in November 1991, the plaintiff alleges that he was denied the opportunity to be reassigned to the position of Executive Assistant to Mr. Trickett; instead, a white female was reassigned to the position. *See* Compl. ¶ 17–26.

The plaintiff here attempts to establish a common nexus or theme by alleging that he has been the victim of discrimination "primarily through the actions of ... Elizabeth James, the Principal Deputy Assistant Secretary for Management and Budget." Compl. ¶ 2. The basis for this assertion is that Ms. James ultimately authorizes and approves all personnel actions in ASMB.

Notwithstanding the fact that the Office of the Assistant Secretary for Management and Budget required Ms. James to sign off on every hire and promotion, the undisputed evidence establishes that each of these occurrences are independent of the others, resting on discrete facts involving different positions and different selecting officials. For the July 1989 Special Assistant to the Deputy Assistant Secretary position, the selecting official was James Trickett (R.I. Ex. 6 p. 2; Trickett dep., vol. 1, p. 253). Ms. James did not interview the selectee or any of the candidates for the position (R.I. Ex. 5, p. 4; James dep. at p. 350). For the July 1990 position at DBMT, Mr. John Hopkins was the selecting official (R.I. Ex. 5, p. 4; Hopkins dep., p. 17). Mr. Hopkins was the selecting official for the Deputy Director for OMAS (Hopkins dep., p. 114; Shahrigian Dep., p. 76). Ms. Judy Satine and Joanne Amato were the selecting officials for the Director of DBMT in April 1991. Mr. Raffie Shahrigian made the decision to terminate the plaintiff's detail as Special Assistant (GM–14) to the Acting Director of the OMO and to detail Judy Satine to the position of Executive Assistant (GM–15) in order to reduce layers of management in his office (Shahrigian Dep., p. 95; R.I. Ex. 6, p. 15). Thus, the selecting officials varied with each occurrence. *See Stoller v. Marsh,* 682 F.2d 971, 975 (D.C.Cir.1982) ("a series of allegedly discriminatory actions against the same employee, even with the same alleged motive, such as race discrimination, is not enough [to

establish a continuing violation.]"), *cert. denied,* 460 U.S. 1037, 103 S.Ct. 1427, 75 L.Ed.2d 787 (1983); *Milton v. Weinberger,* 645 F.2d 1070, 1077 (D.C.Cir.1981) (claims concerning four promotions time-barred because allegations not raised connecting remote claims to timely ones); *De Medina v. Reinhardt,* 444 F.Supp. 573, 576–77 (D.D.C. 1978) (series of refusals to hire did not establish a continuing violation).

Without pointing to specific evidence, the plaintiff alleges that Ms. James has, in each instance, intervened to ensure that the plaintiff would not be given career opportunities. This is shear speculation. The actions alleged here do not constitute a series of related acts such as would come within the continuing violation doctrine; the plaintiff's mere words that they are do not make that so.

2. *There is no basis here to equitably toll the requirement that the plaintiff bring his complaint to the attention of the EEO Counselor within the regulatory time limit.*

The requirement that an EEO complaint be timely filed is subject to equitable considerations that may excuse noncompliance. *Jarrell,* 753 F.2d at 1091 (failure to contact an EEO Counselor may be excused if result of justifiable reliance on the advice of another government officer). Under the equitable tolling doctrine, "a person injured by an unlawful act need not sue until he knows, or through the exercise of reasonable diligence would have known, not only that he has been injured ... but also that he has been injured by a possibly wrongful act of the defendant." *Moskowitz v. Trustees of Purdue Univ.,* 5 F.3d 279, 281 (7th Cir.1993). Equitable relief in tolling situations is to be applied sparingly. *Irwin v. Veterans Affairs,* 498 U.S. 89, 94, 111 S.Ct. 453, 456–57, 112 L.Ed.2d 435 (1990); *Mondy v. Secretary of the Army,* 845 F.2d 1051, 1057 (D.C.Cir.1988) (time limitations for Title VII claims shall be equitably tolled "only in extraordinary and carefully circumscribed instances"); *DuVall v. Postmaster General United States Postal Serv.,* 585 F.Supp. 1374, 1376 (D.D.C.1984), *aff'd,* 774 F.2d 510 (1985).

■ Here, the plaintiff asserts that at least seven times during a four year period he was not selected for or considered for positions or opportunities while white employees were. The plaintiff argues that he did not believe (and did not have a reasonable basis to believe) that he had been discriminated against until January 1993. Plaint's Mot. in Opp. at 34–35.

It is undisputed that the plaintiff was aware that he was not selected or considered at the time of each decision and that a white individual was. The plaintiff is a well-educated, high-level federal employee and professional, having considerable experience in the Office of the Assistant Secretary for Management and Budget. The plaintiff has proffered over 110 exhibits, some going back to 1989, which, if nothing else, illustrates that he has slept on his rights. In this regard, the plaintiff, as a person who had done Freedom of Information Act work, reasonably should know enough to investigate, secure documents, and make inquiries.

Although the plaintiff may not have had all the facts or supporting documents that he later acquired concerning a particular selection, the plaintiff knew or reasonably should have known of the alleged discriminatory event at the time each selection was made. There is no basis here to equitably toll the time limits applicable to the plaintiff. His failure to pursue administrative claims is bar to this action.

### B. The Defendant is Entitled to Summary Judgment on the Plaintiff's Remaining Claims.

The plaintiff's remaining claims involve the Grade 15 position of Director of the Administrative Services Center (ASC), a position that first came into existence on October 1, 1992. The following facts are relevant to the plaintiff's remaining claims.

On October 1, 1992, the plaintiff, a GM–14, was designated by the then Assistant Secretary, Arnold Tompkins (an African–American man), to serve a 120–day detail as the first Acting Director of ASC, a newly created organization. Mr. Tompkins and Ms. James discussed the possibility of permanently filling and advertising the position; however, Mr. Tompkins rejected that option due to the election of November 1992 and consequent change in administrations in January of 1993. Mr. Tompkins was not prepared to decide whether ASC would be maintained as a separate organization. (Tompkins dep. p. 15, 19–21, 23, 68–69, 81–82, 110–112, 114).

After the plaintiff's detail expired in accordance with the personnel regulations, 5 C.F.R. § 335.103(c)(1)(ii), Ms. Rosalie Reggetz, a white woman, also a GM–14, served a 120–day detail as Acting Director of ASC. At the expiration of Ms. Reggetz's detail, Ms. Peggy Dodd, a white woman, the Director of the Division of Integrity and Organizational Review, GM–15, was given a 120–day detail to the position, which was then extended. Ms. Dodd was then laterally reassigned as the permanent Director of ASC on November 1993.

Based on these facts, the plaintiff alleges (1) that the defendant engaged in unlawful discrimination when it failed to promote him in 1993 to the grade 15 position of Director of the ASC and, instead, permanently placed Ms. Dodd in that position; and (2) the defendant unlawfully retaliated against him when it failed to post the ASC Director's job for permanent selection or promotion after the plaintiff filed his EEO complaint in 1993. Both claims must fail as a matter of law.

\* \* \*

"With the goal of 'progressively ... sharpen[ing] the inquiry into the elusive factual question of intentional discrimination,' ... [the Supreme Court] in [*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973),] established an allocation of the burden of production and an order for the presentation of proof in Title VII discriminatory-treatment cases." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506, 113 S.Ct. 2742, 2746, 125 L.Ed.2d 407 (1993). That model is referred to herein as the "Tripartite Framework."

In accordance with the Tripartite Framework, first, the plaintiff must establish by a preponderance of the evidence a *prima facie* case. The elements of a *prima facie* case vary depending on whether the case involves a failure to hire, failure to promote, or retali-

ation. *See Judge v. Marsh,* 649 F.Supp. 770 (D.D.C.1986) (citing *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824). Second, the defendant must rebut the *prima facie* case by producing an explanation that the adverse action was taken for a legitimate, nondiscriminatory reason. *St. Mary's,* 509 U.S. at 506, 113 S.Ct. at 2746–47. Third, the plaintiff must prove by a preponderance that the explanation is a pretext for discrimination or retaliation, i.e., that the reason was false and that discrimination or retaliation was the real reason. *Id.*

In light of the foregoing, believing the plaintiff's evidence and drawing all justifiable inferences in his favor, the Court concludes that no genuine issue of material fact exists and the defendant is entitled to judgment as a matter of law. The plaintiff has not established a *prima facie* case of discrimination or retaliation. Even if he could, he could not show by a preponderance of evidence that the non-discriminatory reasons proffered for the actions taken by the defendant are pretextual.

1. *The defendant is entitled to judgment on the plaintiff's claim of race discrimination.*

■■■■ The plaintiff has asserted that this is a non-promotion case. In the non-promotion context, the plaintiff sets forth his *prima facie* case by showing (1) that he belongs to a protected group, (2) that he was qualified for and applied for a promotion, (3) that he was considered for and denied the promotion, and that (4) other employees were not members of the protected group were indeed promoted at the time the plaintiff's request for a promotion was denied. *Johnson v. Brock,* 810 F.2d 219, 223 (D.C.Cir.1987). The plaintiff has not established a *prima facie* case here, in that he has not shown that he was considered for and denied a promotion or that he was denied a promotion when other employees who were not members of the protected group were promoted.

The undisputed facts establish that the plaintiff was given a temporary 120–day detail in 1992–93 in the ASC Director position. He was paid at the Grade 15 level until that detail terminated. Pursuant to the regula-

tions, his detail expired as a matter of law and he was returned to the position he held, a Grade 14 position, prior to his detail. *See* 5 C.F.R. § 335.103(c)(1)(ii) (details to a higher graded position for more than 120 days must be advertised and open to competition). The position was then detailed to another Grade 14 employee. Then, Ms. Dodd, who was a Grade 15 employee, assumed the position. After Ms. Dodd's detail, she was laterally transferred into the position on a permanent basis.

The parties agree that the plaintiff was given a 120–day detail. The plaintiff does not dispute the defendant's evidence that personnel rules require that, absent merit promotion plan competition for the position, the plaintiff could not be extended in that position. The plaintiff was placed in this 120–detail, over Grade 15 employees, at the suggestion of the Assistant Secretary himself, an African–American, in order to gain additional experience and build his resume. It was Tompkins who made the position a temporary one. Ms. James' concurrence with Tompkins' decision not to compete the position in January 1993 did not transform the decision into an act of intentional discrimination. She simply failed to change a decision made by a previous African–American Assistant Secretary following a change in administration and political parties and before a new leadership had been appointed to ASMG.

On these facts, the plaintiff cannot establish a legitimate claim for failure to promote. The position at issue was never competed and the plaintiff was not eligible for the position without competition. Neither the plaintiff nor anyone else was eligible to apply for the position under the merit promotion plan. Thus, the plaintiff cannot, as a matter of law, establish that he was considered for and denied a promotion while others similarly situated were promoted.

■■ In any event, the plaintiff cannot prove that the proffered reason for his "removal" as Acting Director was pretext. His 120–day detail, given to him by an African–American, had expired. 5 C.F.R. § 335.103(c)(1)(ii) mandates that his detail

**350**

from a Grade 14 to a Grade 15 position last no longer than 120 days.

### 2. *The defendant is entitled to judgment on the plaintiff claim of retaliation.*

 In order to make out a prima facie case of retaliation under Title VII, the plaintiff must show that (1) he engaged in protected activity; (2) that the defendant took an adverse personnel action against him; and (3) that the adverse action was causally related to the plaintiff's engaging in protected activity. *Berger v. Iron Workers Reinforced Rodmen,* 843 F.2d 1395, 1423 (D.C.Cir.1988). The plaintiff has not established his *prima facie* case of retaliation here because he cannot show that the adverse action was causally related to the plaintiff's engaging in protected activity.

The position at issue was filled by lateral transfer and, thus, unavailable to anyone under a merit promotion plan, including the plaintiff. This demonstrates the lack of causation of the plaintiff's retaliation claim in the filling of the director's job by Ms. Dodd. To hold otherwise would make illegal all lateral transfers through the executive branch of the government at the highest paid levels, such as that which is extant in this case.

Moreover, even if the plaintiff established a *prima facie* case, he has not adduced evidence that the proffered reasons for the defendant's actions were pretextual. Specifically, the defendant introduced evidence that the plaintiff was removed from the ASC Director's job because his 120–day detail had expired and that a lateral transfer was made due to Executive Order 12839 of February 10, 1993, which ordered the executive departments and agencies to streamline. The plaintiff has provided nothing beyond his speculations that the reasons proffered by the defendants here were a pretext for discrimination.

### CONCLUSION

For the foregoing reasons, the Court shall enter final judgment in favor of the defendant in the above-captioned case. The Court shall issue an Order of even date herewith consistent with the foregoing Memorandum Opinion.