**Sidney WALKER, Plaintiff,**

v.

**John H. DALTON, Defendant.**

**Civil Action Nos. 96–00617, 97cv02732(HHK).**

United States District Court, District of Columbia.

March 8, 2000.

Brian C. Plitt, Washington, DC, for Plaintiff.

G. Michael Harvey, Assistant United States Attorney for the District of Columbia, Office of the United States Attorney for the District of Columbia, Washington, DC, for Defendant.

## MEMORANDUM OPINION

KENNEDY, District Judge.

Plaintiff Sidney Walker, an African–American employee of the Navy's Public Works Center ("PWC"), filed suit under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as amended ("Title VII"), alleging that the Navy discriminated against him on the basis of his race when it selected white applicants to fill two Maintenance Supervisor II positions for which plaintiff had applied.[1] Plaintiff filed a further action under Title VII alleging that the Navy had discriminated against him, subjected him to a racially hostile working environment, and retaliated against him after he prevailed in a prior EEO action by demonstrating that the Navy had discriminated against him on the basis of race in denying him a Maintenance Supervisor I position.[2]

Presently before the court are plaintiff's and defendant's cross motions for summary judgment as to liability on these claims. Upon consideration of the motions, the responses thereto, and the record of this case, the court concludes that plaintiff's motion for summary judgment should be denied and that defendant's motion for summary judgment should be granted in part and denied in part.

### I. Standard Of Review

Under Rule 56, a motion for summary judgment should be granted if and only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter

---

1. These allegations are contained in civil action number 96–00617(HHK), which has been consolidated with civil action number 97–02732(HHK).

2. These claims form the basis of civil action number 97–02372(HHK), which is consolidated with civil action number 96–00617(HHK).

of law." Fed.R.Civ.P. 56(c). The moving party's "initial responsibility" consists of "informing the [trial] court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (internal quotation marks omitted).

If the moving party meets its burden, the burden then shifts to the non-moving party to establish that a genuine issue as to any material fact actually does exist. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The non-moving party is "required to provide evidence that would permit a reasonable jury to find" in its favor. *Laningham v. U.S. Navy,* 813 F.2d 1236, 1242 (D.C.Cir.1987). Such evidence must consist of more than mere unsupported allegations or denials and must set forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *Celotex,* 477 U.S. at 322 n. 3, 106 S.Ct. 2548. If the evidence is "merely colorable" or "not significantly probative," summary judgment may be granted. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## II. FACTUAL BACKGROUND

Plaintiff Sidney Walker is an African-American employee of the PWC.[3] Plaintiff applied for three positions with the PWC for which he was not selected: a WS–10 Maintenance Supervisor I position ("WS–10 position"), a WS–13 Maintenance Supervisor II position ("WS–13 position"), and a WS–15 Maintenance Supervisor II position ("WS–15 position").[4] Defendant's

decision not to grant plaintiff the WS–10 position is not directly at issue in this case and will be discussed only to the extent that it relates to plaintiff's retaliation and discrimination claims. In contrast, defendant's decision not to grant plaintiff the WS–13 and WS–15 positions is directly at issue, and the court must determine whether to grant summary judgment on plaintiff's claim that the denial of each of these positions was discriminatory.

## A. Plaintiff's Retaliation and Discrimination Claims

In 1993, plaintiff filed an EEO complaint against the Navy asserting that his non-selection for the WS–10 and WS–13 positions resulted from racial discrimination.[5] In 1995, the Navy adopted as its Final Decision the Administrative Law Judge's finding that plaintiff had been discriminated against with respect to the WS–10 position but not with respect to the WS–13 position.[6] The Navy agreed to provide to plaintiff certain "make whole" relief including a promotion to a position that was substantially similar to the WS–10 position that plaintiff was discriminatorily denied.[7] The Navy promoted plaintiff to the WS–10 level, and plaintiff held a series of WS–10 Maintenance Supervisor I positions with the PWC.

Plaintiff's allegations of retaliation and discrimination arise from the treatment that he allegedly received after filing his EEO action.[8] Plaintiff alleges, *inter alia,* that after he was promoted to a WS–10 position he was denied adequate staff and shop facilities; he was placed on a list of people to be subject to a reduction-in-force ("RIF"); he was alternately assigned too little and too much work; and he was not given pay equal to that of his non-minority predecessors.[9]

---

**3.** Pl.'s Statement of Facts ¶ 1.

**4.** *Id.* ¶¶ 2, 4, 12.

**5.** Pl.'s Statement of Facts ¶ 2; Def.'s Statement of Facts ¶ 2.

**6.** Def.'s Exh. 26.

**7.** *Id.*

**8.** *See generally* Complaint, Civ.A.No. 97–02732(HHK).

**9.** Civ.A.No. 97–02732(HHK) Complaint ¶¶ 15, 19–21, 27, 33–34.

## B. The WS–13 Position

In April 1993, plaintiff applied for a WS–13 Maintenance Supervisor II position at the PWC.[10] Approximately thirty people applied for the position, and in June 1993 Pietro Magri, a subject-matter expert, rated the applications.[11] Mr. Magri rated plaintiff at 14 and Mr. Olson, the selectee, at 20.[12] There were ten applications rated higher than Mr. Walker's.[13] After Mr. Magri had rated the applications, Cynthia A. Lowell, a Supervisory Staffing specialist, determined that the initial crediting plan that Mr. Magri had employed in rating the applicants [14] was too restrictive in the sense that it required that the applicant have supervised individuals in the past and placed too great an emphasis on the number of individuals previously supervised.[15] The crediting plan was revised, and a three-member panel was formed to rate the applicants under the less restrictive criteria.[16] The three members of the ranking panel were John Hopkins, a white male; Frank Williams, an African–American male; and Randolph Buchanan, a white male.[17]

The three-member panel convened.[18] Initially, the panel rated all applications except for those belonging to Mr. Magri's top three candidates: Eugene O'Brien, Charles Taylor, and Clifford Olsen, the selectee.[19] The Human Resources Office ("HRO") previously had physically separated those applications from the others and used them to prepare a certification, or "best qualified" list.[20] When the new panel was convened, those three applications were initially overlooked and were not rated at that time.[21] Plaintiff emerged from the initial rating with a score of 13, which placed him in a three-way tie for second place and thus among the top four applicants.[22]

Shortly thereafter, Nelia A. Talley of the HRO located the three applications that had been overlooked and asked the three panel members to rate those applications.[23] The panel did not reconvene; instead, each panel member rated separately each of the remaining three applications.[24] Each of the three remaining applications received from the panel members an aggregate score that was higher than the aggregate score of any of the initially-evaluated applications.[25] None of the three panel members knew plaintiff when they evaluated the WS–13 applications, and none of the

---

10. Def.'s Statement of Facts ¶ 1.

11. *Id.* ¶ 3.

12. Def.'s Statement of Facts ¶ 6.

13. Def.'s Exh. 4.

14. Plaintiff states that because Mr. Magri knew plaintiff prior to rating the applications, "it cannot be said that the rating was based entirely on the crediting plan." Pl.'s Statement of Facts (Reply) ¶ 6. Plaintiff does not dispute that Mr. Magri used the crediting plan in evaluating plaintiff's application.

15. Def.'s Statement of Facts ¶ 7.

16. Def.'s Statement of Facts ¶ 8.

17. Def.'s Statement of Facts ¶ 10.

18. Pl.'s Reply Exh. 3 at 369 (testimony of Nelia A. Talley at administrative hearing). There is some dispute between defense counsel and plaintiff's counsel as to what happened next. However, both cite to the same portions of the record, and the testimony does not conflict. Attorney disputes regarding the proper characterization of the evidence will not preclude summary judgment where the evidence itself is clear and there are no genuine issues of material fact. Since plaintiff has not moved for summary judgment with respect to the WS–13 position, the court accepts plaintiff's characterization of the facts to the extent supported by the record.

19. Pl.'s Reply Exh. 3 at 369–373.

20. Pl.'s Statement of Facts (Reply) ¶ 8; Pl.'s Reply Exh. 3 at 369–373.

21. Pl.'s Reply Exh. 3 at 369–373.

22. Def.'s Exh. 14.

23. Pl.'s Exh. 3 at 369–73.

24. *Id.; see also* Pl.'s Statement of Facts (Reply) ¶ 11.

25. Pl.'s Exh. 14.

three knew of plaintiff's EEO complaint.[26] All three panel members stated that they ranked the selectee, Olsen, higher than plaintiff because Olsen had superior supervisory experience.[27]

The panel's three highest-rated applications, which belonged to Mr. Magri's top three candidates, were given to Michael Giamber for the final selection. Plaintiff's application was not among those given to Mr. Giamber. One of the three candidates whose applications were given to Mr. Giamber was Charles Taylor, an African–American.[28] Mr. Magri spoke favorably with Mr. Giamber regarding Mr. Olsen's application.[29] Mr. Giamber selected Mr. Olsen for the position.

## C. The WS–15 Position

On November 23, 1994, defendant issued a vacancy announcement for a WS–15 Maintenance Supervisor II position.[30] Plaintiff's application for the position was signed and dated November 30, 1994, the closing date for the vacancy announcement.[31] On that date, the closing date was extended another week.[32] A total of nine individuals applied for the position, including plaintiff.[33]

26. Def.'s Statement of Facts ¶¶ 13–15.

27. Def.'s Statement of Facts ¶¶ 13–15. Plaintiff disputes the validity of this proffered explanation for Olsen's selection over plaintiff, but does not dispute that this was the explanation given. Pl.'s Statement of Facts (Reply) ¶¶ 8, 13–15.

28. Def.'s Statement of Facts ¶ 17.

29. Pl.'s Statement of Facts (Reply) ¶ 8; Pl.'s Reply Exh. 7 (Giamber Deposition) at 30–32.

30. Def.'s Statement of Facts ¶ 1 (WS–15 section).

31. Pl.'s Statement of Facts ¶ 6; Def.'s Statement of Facts (Opposition) ¶ 6.

32. Pl.'s Statement of Facts ¶ 7.

33. *Id.* ¶ 2.

34. Pl.'s Exh. 2 (Tiller Deposition) at 53.

35. *Id.* at 54; Def.'s Statement of Facts (Opposition) ¶ 8. Plaintiff states that "[t]he Navy's

It is HRO policy that the staffing specialist who rates applications does not begin the process until at least five days after the closing date so that mailed applications can be received.[34] There is no requirement, either by regulation or practice, that applications be rated within any specific time period after the five days have elapsed.[35] The HRO "tr[ies] to get them rated within 20 days, get something going on them." [36] After the applicants are rated, a certificate is issued to the selecting official containing a list of highly-qualified candidates.[37]

In this case, it is undisputed that neither plaintiff's nor any other application for the WS–15 position was rated within 5–20 days of the closing date.[38] An initial review for eligibility to be considered was conducted on December 16, 1994.[39] One candidate was disqualified.[40] Eight applicants, including plaintiff, remained for consideration at the time that the position was filled with a white male through the Priority Placement Program ("PPP").[41]

The stated purpose of the PPP is to promote employment stability for civilian Naval employees who are affected by downsizing, consolidations, position classification decisions, rotations from overseas positions, and installation closures.[42] An

policy is that job applications are to be rated within five to 20 days after the job closing date." Pl.'s Statement of Facts ¶ 9 (citing Tiller Deposition at 53–55). This mischaracterizes the testimony upon which plaintiff relies. To avoid confusion, the court quotes above the witness's actual testimony.

36. Pl.'s Exh. 2 (Tiller Deposition) at 54; Def.'s Statement of Facts (Opposition) ¶ 8.

37. Pl.'s Reply Exh. 12 (Tiller Deposition) at 46–47.

38. Pl.'s Statement of Facts ¶ 9.

39. Def.'s Statement of Facts (Opposition) ¶ 8.

40. Def.'s Statement of Facts ¶ 2.

41. Def.'s Statement of Facts (WS–15 position) ¶ 2; Pl.'s Statement of Facts ¶ 12.

42. Def.'s Statement of Facts ¶¶ 4, 5. The court is aware that plaintiff's counsel has attempted

employee who is registered with the PPP and is found to be well-qualified for an advertised position must be selected over all other applicants.[43] The PPP selectee's qualifications are not compared with those of the other applicants.[44]

There is an exception to the operation of the PPP: if, before a highly-qualified candidate is found through the PPP, the other applicants for a position are rated, a certification to the selecting official is issued, and all of the applicants listed on the certification are within the Department of Defense, then the Navy is no longer required to defer to the PPP before selecting a candidate.[45] In this case, none of the applicants, including plaintiff, were ever ranked or certified, and the PPP was used to fill the position.[46]

## III. ANALYSIS

### A. Plaintiff's Retaliation and Discrimination Claims

Plaintiff has moved for summary judgment as to liability on his retaliation and discrimination claims. Plaintiff bases his motion on an Order that was issued by Judge Harold Greene in a related case.[47] The relevant background is as follows: In 1997, plaintiff filed suit in this court alleging, inter alia, that none of the WS–10 Maintenance Supervisor I positions that he had been given after prevailing on his EEO complaint were substantially similar to the WS–10 position that plaintiff had been discriminatorily denied, and that the Navy had thus not discharged its duty to

provide relief.[48] After hearing evidence on this issue, Judge Greene concluded that the Navy had not placed plaintiff in a substantially similar position, and ordered the Navy to place plaintiff in a substantially similar position.[49]

■ Plaintiff contends that Judge Greene's finding that the Navy had not placed plaintiff in a substantially similar position necessitates the finding, as a matter of law, that the Navy retaliated and discriminated against plaintiff. Pl.'s Mem. Support Mot. Summ. Judg. at 12–13. This is simply wrong. Judge Greene's ruling went to the issue whether the Navy had complied with the Administrative Law Judge's directive to place plaintiff in a substantially equivalent position to the position that he was denied. In determining that the Navy had not placed plaintiff in a substantially equivalent position, Judge Greene did not make a finding that the Navy's failure to comply with the directive was the result of discrimination or was in itself retaliatory. The issues raised in plaintiff's compliance action[50] are distinct from the issues raised in plaintiff's retaliation and discrimination action,[51] which is the case before the court.

Plaintiff relied upon this analytical distinction in his own Complaint. Responding to the Navy's contention that plaintiff had already filed a civil suit with respect to the events giving rise to the EEO complaint underpinning his retaliation and discrimination suit, plaintiff stated as follows:

In fact, the civil suit referred to[52] is not

to raise an issue of fact regarding the general purpose of the PPP and has reviewed the materials in the record to which plaintiff's counsel has cited. Viewed in the light most favorable to plaintiff, these materials do not cast any doubt upon defendant's description of the purpose of the PPP.

43. Def.'s Statement of Facts ¶ 6.

44. Id. ¶ 9.

45. Pl.'s Reply Exh. 12 (Tiller Deposition) at 49–50.

46. Def.'s Statement of Facts ¶ 10; Pl.'s Statement of Facts (Reply) ¶ 10.

47. Civ.A.No. 97–00217(HHK).

48. See generally Complaint, Civ.A.No. 97–00217(HHK).

49. Civ.A.No. 97–00217(HHK) (Order filed Sept. 10, 1998).

50. Civ.A.No. 97–00217(HHK).

51. Civ.A.No. 97–02732(HHK).

52. Plaintiff identified this action as the compliance action, Civ.A.No. 97–0217.

based upon nor raises [sic] the same causes of action as Mr. Walker's Formal Complaint. In the civil suit, the Navy admitted to illegal discrimination against Mr. Walker in denying him a promotion, but then failed to award him a substantially similar position, full back pay and attorney fees and costs. Therefore, the issues and remedy sought in that suit are those of compliance with the Navy's decision rather than the separate reprisal, discrimination and hostile work environment issues for which Mr. Walker seeks compensation in the EEO complaint.

Civ.A.No. 97–02732(HHK) Complaint ¶ 12. Plaintiff's attempt to disregard the very distinction on which he once relied is unpersuasive.

Thus, this court finds that plaintiff is not entitled to judgment as a matter of law on his retaliation and discrimination claims, and denies plaintiff's motion for summary judgment as to liability on those claims.

## B. WS–13 Position

Defendant has moved for summary judgment on plaintiff's claim that he was denied the WS–13 position due to discrimination. Title VII cases involving the allegedly discriminatory non-selection of an individual for a promotion are analyzed under the familiar three-step scheme explicated in *McDonnell Douglas v. Green*, 411 U.S. 792, 802–805, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Cones v. Shalala*, 199 F.3d 512, 516–17 (D.C.Cir. 2000). A plaintiff must initially establish a *prima facie* case of proscribed discrimination. *See McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817. Once the plaintiff does this, the defendant must articulate a legitimate, nondiscriminatory explanation for the employment decision at issue. *See id.* The defendant need not persuade the court that she indeed relied upon this explanation, but need only "clearly set forth, through the introduction of admissible evidence," *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), a rationale that, standing unchallenged by the plain-

tiff, would support judgment in the defendant's favor. *See McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817. If the defendant succeeds, the inference of discrimination generated from the plaintiff's *prima facie* showing "drops from the case," *Burdine*, 450 U.S. at 255, 101 S.Ct. 1089, and the burden shifts back to the plaintiff to show that the defendant's proffered explanation is pretextual. *McDonnell Douglas*, 411 U.S. at 804–05, 93 S.Ct. 1817. The plaintiff at all times retains the ultimate burden of persuasion. *Burdine*, 450 U.S. at 253, 101 S.Ct. 1089.

The court turns first to the question whether plaintiff has stated a prima facie case. In general, to establish a prima facie claim of disparate treatment discrimination, a plaintiff must establish the following: "(1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination." *Brown v. Brody*, 199 F.3d 446, 452 (D.C.Cir. 1999). The Supreme Court and the Court of Appeals for this Circuit have noted, however, that the precise "elements of a prima facie case may vary depending upon the circumstances of the allegations ...." *McGill v. Munoz*, 203 F.3d 843 (D.C.Cir. 2000) (citing *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253 n. 6, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). Specifically, a plaintiff who has been denied a competitive promotion must demonstrate the following to establish a prima facie case: "(1) he is a member of a protected class; (2) he applied for and was qualified for an available position; (3) despite his qualifications he was rejected; and (4) either someone not of his protected class filled the position or the position remained vacant and the employer continued to seek applicants." *Cones v. Shalala*, 199 F.3d 512, 516 (D.C.Cir. 2000). *See also O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 310, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973);

*Carney v. The American University,* 151 F.3d 1090, 1093 (D.C.Cir.1998).

Applying these standards to the present action, the court concludes that plaintiff has made out a prima facie case. It is undisputed that (1) plaintiff is a member of a protected class; (2) plaintiff applied for the available WS–13 position; (3) plaintiff's application for the position was rejected; and (4) the selectee, Mr. Olsen, is not of plaintiff's protected class. The only dispute centers upon whether plaintiff was qualified for the WS–13 position. Defendant contends that because plaintiff did not make the "best-qualified" list, the court should conclude that plaintiff was not qualified for the position. The court rejects this contention because the fact that plaintiff was not considered to be one of the top three applicants does not support the inference that plaintiff was not qualified for the position. It is reasonable to infer from the evidence that plaintiff was qualified for the position. Thus, plaintiff has made out the elements of a prima facie case.

As plaintiff has stated a prima facie case, the burden shifts to defendant to articulate a legitimate, non-discriminatory reason for having selected Mr. Olsen rather than plaintiff. *See McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817. Defendant has articulated such a reason: that the three members of its evaluation panel found that Mr. Olsen had greater supervisory experience and was thus the superior candidate.

Defendant having produced a legitimate, non-discriminatory reason for its actions, plaintiff, to avoid summary judgment, must adduce sufficient evidence to allow a reasonable factfinder to find that defendant's proffered reasons were a pretext for discrimination. *See, e.g, Aka v. Washington Hosp. Center,* 156 F.3d 1284, 1288 n. 3, 1290 (D.C.Cir.1998) (in banc). Plaintiff need not necessarily adduce additional evidence beyond that which he presents to establish his prima facie case and to refute defendant's explanation, if the evidence that he presents is sufficient to allow a reasonable jury to infer discrimination. *See Aka,* 156 F.3d at 1289–90.

In this case, plaintiff adduces three types of evidence in an attempt to avoid summary judgment. First, plaintiff points to "an enduring atmosphere of racial hostility" in the PWC. Pl.'s Opp. at 11. Plaintiff introduces in his argument statistics regarding the percentages of African–American workers and supervisors at the PWC and quotes EEO testimony regarding racial discrimination in the trade shops during the 1960s and 1970s. *Id.* at 3, 12. Even assuming that plaintiff can rely upon facts that are not contained either in his or in defendant's Statements of Facts, these facts are insufficient to allow plaintiff to avoid summary judgment in this case. Information about the composition of the workforce during the relevant time period and the percentage of minority supervisors is relevant to the question of discrimination, but it is not enough to establish pretext where, as discussed below, the facts of the specific case do not themselves lend any support to an inference of discrimination. Assuming that information about the PWC's tendency to discriminate against African–American employees in the 1960s and 1970s is even relevant to plaintiff's case, the court finds it insufficient to allow a reasonable jury to conclude that plaintiff was discriminated against in 1993.

Second, plaintiff attempts to avoid summary judgment by making much of the "irregular procedures" that occurred in this case, specifically the "finding" of the three top applications and Mr. Magri's conversation with Mr. Giamber. Pl.'s Opp. at 13–15, 17–18. There is nothing in the record from which a reasonable jury could conclude that the three top applications were first overlooked, then found, through anything other than inadvertence. Ms. Talley, the HRO employee who lost and then found the applications, is an African–American. Talley Decl. ¶ 2. At that time, Ms. Talley did not know plaintiff, plaintiff's race, or the race of the eventual selectee. *Id.* In short, there is nothing to indicate

that Ms. Talley withheld the applications in an attempt to discriminate against plaintiff. As for Mr. Magri's conversation with Mr. Giamber, a reasonable jury could not conclude that it harmed plaintiff, since plaintiff was not one of the three applicants whose applications had been forwarded to Mr. Giamber for consideration. Thus, the conversation between Mr. Magri and Mr. Giamber was irrelevant to plaintiff's non-selection for the position, and plaintiff cannot establish pretext on that basis.

■ Third, plaintiff attempts to attack defendant's proffered explanation for its actions and to avoid summary judgment by stating that "[a] reasonable jury could find, on the basis of [a PWC former employee's] testimony, that Mr. Walker's application showed as strong or stronger qualifications for the job than Mr. Olsen's." Pl.'s Opp. at 15. Even assuming that the former employee's testimony would be admissible at trial, this is too thin a reed to support a finding of pretext. In the absence of any other evidence that would allow a jury to infer that discrimination took place in a particular case, slight questions of comparative qualifications do not warrant a jury trial. "Title VII, it bears repeating, does not authorize a federal court to become 'a super-personnel department that reexamines an entity's business decisions.'" *Barbour v. Browner*, 181 F.3d 1342, 1346 (D.C.Cir.1999) (quoting *Dale v. Chicago Tribune Co.*, 797 F.2d 458, 464 (7th Cir. 1986)).

In sum, the record lacks evidence upon which a reasonable jury could base a finding of discrimination. It is undisputed that none of the three panel members who ranked the applications knew plaintiff or knew plaintiff's race. One of the three panel members who ranked the applicants was an African–American male. One of the three best-qualified candidates rated higher than plaintiff both by Mr. Magri and by the panel was an African–American male. These facts negate any weak inference of pretext that a jury might draw from statistical data or from a former employee's comparative evaluation of plaintiff's and the selectee's qualifications. Under these circumstances, no reasonable jury could find pretext, and defendant thus is entitled to summary judgment.

## C. WS–15 Position

Plaintiff and defendant have each moved for summary judgment on plaintiff's claim that the denial of the WS–15 position was discriminatory. The court analyzes these motions under the *McDonnell Douglas* framework set forth in part III.B., *supra.* Under that framework, the court first considers whether plaintiff has made out a prima facie case. The court concludes that he has. Viewed in the light most favorable to plaintiff, the evidence establishes that (1) plaintiff is a member of a protected class; (2) he applied for and was qualified for the available WS–15 position; (3) despite his qualifications, he was rejected for the position; and (4) the selectee, Mr. Ottinger, is not of plaintiff's protected class. *See, e.g., O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 310, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Cones v. Shalala*, 199 F.3d 512, 516–17 (D.C.Cir. 2000); *Carney v. The American University*, 151 F.3d 1090, 1093 (D.C.Cir.1998). Thus, defendant's motion for summary judgment on the ground that plaintiff failed to make out a prima facie case is denied.[53]

53. Defendant based its motion on the Court of Appeals' formulation of the prima facie case in *Johnson v. Brock*, 810 F.2d 219 (D.C.Cir. 1987). In that case, the Court of Appeals stated that to establish a prima facie case, a plaintiff must show, *inter alia*, "that she was *considered for* and denied the promotion." *Id.* at 223 (emphasis added). Defendant argues that in this case, plaintiff was never *considered for* the WS–15 position, and that plaintiff thus cannot make out a prima facie case. There is nothing in *Johnson* to indicate that the Court of Appeals intended to place such weight on the phrase "considered for" as to make it outcome-determinative, and subsequent Supreme Court and Court of Appeals opinions have not included that phrase in the standard formulation of the prima facie case. *See, e.g., O'Connor*, 517 U.S. at 310, 116 S.Ct. 1307; *Cones*, 199 F.3d 512, 516–17.

As plaintiff has made out a prima facie case, the burden shifts to defendant to articulate a legitimate, nondiscriminatory reason for its selection of Mr. Ottinger rather than Mr. Walker for the position. *See, e.g., McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817. Plaintiff has moved for summary judgment on this issue, alleging that defendant cannot articulate such a reason because defendant's Rule 30(b)(6) deponent, Ms. Tiller, was unable to explain why the closing date for receipt of additional applications was extended for one week. Pl.'s Mem. Support Motion for Summ. Judg. at 7–10. According to plaintiff, since defendant's Rule 30(b)(6) deponent was unable to explain why the closing date was extended, defendant is barred from offering any legitimate explanation for the extension of the closing date. *Id.*

Plaintiff's argument misconstrues the question at issue here, which is not whether defendant can adduce legitimate, non-discriminatory reasons for the extension of the closing date—a decision of no consequence to plaintiff, since the selectee was not among the applicants who applied during the extended time period, and was not even selected through the PPP during the extended time period—but rather whether defendant can adduce legitimate, non-discriminatory reasons for having selected Mr. Ottinger for the position rather than Mr. Walker. In this case, defendant has adduced such a reason: the operation of the Priority Placement Program. As defendant has articulated a legitimate, nondiscriminatory reason for its decision to award to the selectee the position for which plaintiff had applied, plaintiff's motion for summary judgment must be denied.

The next step in the court's analysis is to determine whether, as plaintiff claims, "[g]enuine issues of material fact with respect to pretext exist for trial" with respect to plaintiff's WS–15 claim. Pl.'s Opp. at 1. In this case, the court doubts that there is sufficient evidence of pretext to warrant a jury trial. However, defendant did not file for summary judgment on that ground, and the court will not grant sum-

mary judgment sua sponte without putting plaintiff on notice and giving plaintiff an opportunity to put forth all the evidence on pretext that he can muster. *See, e.g., Athridge v. Rivas*, 141 F.3d 357, 361 (D.C.Cir. 1998) ("While district courts possess the authority to enter summary judgment against a party sua sponte, ... that authority may only be exercised so long as the losing party was on notice that she had to come forward with all her evidence.") (citations and internal quotation marks omitted). For that reason, on February 8, 2000, the court issued an order that stated "[p]laintiff is hereby put on notice that the court is considering whether or not to grant summary judgment to defendant on the ground that no reasonable jury could find that defendant's explanation for having not selected plaintiff for the WS–15 position is pretext for discrimination." That order further instructed the parties to brief the issue for resolution by the court.

In sum, the court denies plaintiff's and defendant's motions for summary judgment as to plaintiff's WS–15 claim, and awaits further briefing on the pretext issue to determine whether plaintiff's claim should ultimately proceed to trial.

## IV. CONCLUSION

For the foregoing reasons, the court concludes that defendant's motion for summary judgment should be granted in part and denied in part, and plaintiff's motion for summary judgment should be denied. An appropriate order accompanies this memorandum.