**Kenneth L. CONES, Appellant,**

v.

**Donna E. SHALALA, Secretary, Department of Health & Human Services, Appellee.**

No. 97–5093.

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 5, 1999.

Decided Jan. 4, 2000.

Roland G. Schroeder argued the cause for appellant. With him on the briefs was William D. Hopkins.

Diane M. Sullivan, Assistant U.S. Attorney, argued the cause for appellee. With her on the brief were Wilma A. Lewis, U.S. Attorney, and R. Craig Lawrence and Kimberly N. Brown, Assistant U.S. Attorneys.

Before: WILLIAMS, GINSBURG and TATEL, Circuit Judges.*

Opinion for the Court filed by Circuit Judge TATEL.

TATEL, Circuit Judge:

In this case, we consider a federal government employee's complaint that his agency denied him a promotion on the basis of race and then retaliated against him when he complained. Because we disagree with the district court's conclusion that appellant failed to establish prima facie cases of discrimination and retaliation, and because the record contains sufficient evidence from which a jury could infer that the agency's stated reason for selecting a white person was pretext for racial discrimination, we reverse the district court's grant of summary judgment to the government.

I

Appellant Kenneth Cones, an African American, began working for the federal government in 1970 as a GS–1. Advancing up the career ladder during the next two decades, Cones eventually became a GS–14 Special Assistant to the Director of the Division of Buildings Management and Telecommunications, part of the Office of the Assistant Secretary for Management and Budget ("ASMB") at the Department of Health and Human Services. At ASMB, Cones received uniformly excellent evaluations and applied for several promotions but was never selected. Each time HHS filled the position with a white person.

In 1992, the head of ASMB, Assistant Secretary Arnold Tompkins, also an African American, reorganized ASMB, dissolving the Office of Management and Acquisition where Cones was working and dividing its functions between two newly created entities. One of the new entities, the Administrative Service Center ("ASC"), was given responsibility for day to day physical operations of HHS, including building maintenance, management of the wellness center, and special program coordination. Tompkins detailed Cones to serve as Acting Director of ASC. Although the new position was rated GS–15 and Cones was still a GS–14, personnel

* Circuit Judge Ginsburg was present for oral argument but took no part in either the consideration or the decision of this case.

regulations permitted Tompkins to detail Cones to the position for up to 120 days without using the competitive selection process. *See* 5 C.F.R. § 335.103(c)(1)(ii). Tompkins testified that he detailed Cones to the Acting Director position because ASMB had been criticized for having a poor EEO record and also because he thought Cones deserved an opportunity to enhance his skills.

A month and a half into Cones' detail, the 1992 Presidential election occurred. An appointee of President Bush, Tompkins knew that his tenure as Assistant Secretary would soon end, so he decided that it would be "inappropriate" to advertise or permanently fill the ASC Director position before he left office. After President Clinton's inauguration, and after Elizabeth James, a white female Deputy Assistant Secretary and ASMB's highest ranking career employee, became Acting Assistant Secretary, Cones requested that the ASC Director position be competitively advertised so that he could remain in it either permanently or at least for an extended period of time. James refused, instead detailing a white female GS–14, Rosalie Reggetz, to the position for 120 days. In response, Cones filed an informal complaint of discrimination with HHS's Equal Employment Opportunity Office. Although the EEO Counselor recommended reinstating Cones to the ASC Director position, HHS refused. Cones then filed a formal complaint of discrimination, to which he later added a retaliation claim based on the Department's failure to consider him for a different acting director position.

During this entire period, ASMB was operating under an "informal" hiring freeze, meaning that senior management made every effort to avoid hiring new personnel. On February 10, President Clinton issued an Executive Order establishing a goal of eliminating 100,000 federal government positions. *See* Executive Order No. 12,839, 58 Fed.Reg. 8515 (1993). In relevant part, the Executive Order reads as follows:

Each executive department or agency with over 100 employees shall eliminate not less than 4 percent of its civilian personnel positions ... over the next 3 fiscal years. The positions shall be vacated through attrition or early out programs established at the discretion of the department and agency heads. At least 10 percent of the reductions shall come from the Senior Executive Service, GS–15 and GS–14 levels or equivalent.

*Id.*

Several months later, President Clinton's nominee for Assistant Secretary, Kenneth Apfel, was confirmed and took office. Because Reggetz's 120 day detail was about to end, and because her appointment, like Cones', could not be renewed, another ASMB employee, Peggy Dodd, also a white female, was selected to serve as Acting Director for 120 days. Unlike Cones and Reggetz, Dodd was a GS–15 and had been transferred laterally rather than promoted to the position. As a result, personnel regulations permitted HHS to appoint her as permanent ASC Director without competitively advertising the position. *See* 5 C.F.R. § 335.103(c)(3)(v). This HHS did on December 12.

Cones then amended his still-pending EEO complaint, adding an allegation that HHS had discriminated and retaliated against him by failing to consider and hire him for the permanent ASC Director position. After his EEO complaint had been pending for well over a year, Cones filed suit in the United States District Court for the District of Columbia charging race discrimination and retaliation with respect to the permanent position. He also charged discrimination in connection with the Department's failure to hire him for other positions dating back to 1989.

Granting summary judgment for the Department, the district court found that Cones had failed to establish a prima facie case of discrimination with respect to the ASC Director position because Dodd, the white person selected to fill the position,

had been laterally transferred rather than promoted. *See Cones v. Shalala,* 945 F.Supp. 342, 349 (D.D.C.1996). Alternatively, the district court found, HHS had articulated a non-discriminatory reason for selecting Dodd—that it was in the midst of downsizing—and Cones had failed to present sufficient evidence to establish that this reason was pretext for discrimination. *Id.* The district court dismissed Cones' retaliation claim, again concluding that Cones had established neither a prima facie case nor pretext. *Id.* at 350. As to the pre–1993 claims of discrimination, the district court found that Cones had failed timely to file an EEO complaint. *Id.* at 346–47. Cones moved for reconsideration of the dismissal of his claims related to the ASC Director position. The district court denied the motion.

Cones appeals only the district court's grant of summary judgment with respect to the ASC Director position. Our review is *de novo. See Tao v. Freeh,* 27 F.3d 635, 638 (D.C.Cir.1994) ("Our review of the grant of summary judgment is *de novo,* applying the same standards as the district court").

## II

Title VII of the Civil Rights Act of 1964, as amended, makes it unlawful for the federal government to discriminate in employment on the basis of race. 42 U.S.C. § 2000e–16. Where, as here, the record contains no direct evidence of discrimination, we employ the familiar burden shifting framework of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Brown v. Brody,* 199 F.3d 446 (D.C.Cir.1999) (*McDonnell Douglas* test applies to federal employees' Title VII claims). To establish a prima facie case, the plaintiff must show that (1) he is a member of a protected class; (2) he applied for and was qualified for an available position; (3) despite his qualifications he was rejected; and (4) either someone not of his protected class filled the position or the position remained

vacant and the employer continued to seek applicants. *See McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817; *Kolstad v. American Dental Association,* 108 F.3d 1431, 1436 (D.C.Cir.1997) (subsequent history omitted). Of particular significance to this case, the burden of establishing a prima facie case "is not onerous." *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Its function is limited to eliminating the two most common non-discriminatory reasons for a plaintiff's rejection: "an absolute or relative lack of qualifications or the absence of a vacancy in the job sought." *International Bhd. of Teamsters v. United States,* 431 U.S. 324, 358 n. 44, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977). "Elimination of these reasons for the refusal to hire," the Supreme Court has explained, "is sufficient, absent other explanation, to create an inference that the decision was a discriminatory one." *Id.* With this standard in mind, we turn to the facts of this case.

In granting summary judgment for HHS, the district court held that in order to establish a prima facie case, it was not sufficient for Cones to have demonstrated that a white person had been selected for the position. The district court required Cones to show that a white person had been *promoted* to the position. *Cones,* 945 F.Supp. at 349. Because Dodd had been laterally transferred into the position—*i.e.,* not promoted—the district court concluded that Cones had failed to establish a prima facie case. *Id.* We agree with Cones that this ruling adds undue weight to his relatively light prima facie burden.

The district court, as well as HHS in defending the district court's action, seems to have conflated two different types of promotion cases. One concerns employees like Cones who claim to have been denied promotions to vacant positions. In such cases, the relevant inquiry is controlled by

the precise terms of *McDonnell Douglas*: Was the plaintiff rejected for the position and a person outside of his protected class selected? As we said in *Kolstad*, "[w]here sex discrimination in promotion is alleged, a plaintiff proves her prima facie case by showing that she is female, that she was refused a position for which she applied and was qualified, and that the employer filled the position with a male." 108 F.3d at 1436. *See also Barbour v. Merrill*, 48 F.3d 1270, 1276 (D.C.Cir.1995).

The other type of promotion case involves employees denied increases in pay or grade. In such cases, the traditional *McDonnell Douglas* test does not fit. As we explained in *Bundy v. Jackson*, 641 F.2d 934, 951 (D.C.Cir.1981), a case in which the plaintiff sought an increase in her grade based on years of employment, "the literal *McDonnell* formula ... designed for a claim of discriminatory refusal to hire ... does not precisely apply to a claim, like Bundy's, of discriminatory refusal *to promote*." *Id.* We therefore "adjust[ed] the *McDonnell* formula" to ask whether a similarly situated person outside of Bundy's protected class requested and received the benefit she sought. *Id.*

In this case, the district court erred by applying the *Bundy* test, designed expressly for denials of pay or grade increases, to Cones' *McDonnell Douglas*-controlled non-selection claim, where the only relevant question is whether Cones was rejected for the position and a white person selected. It matters not whether the person ultimately selected was promoted to that position, hired from a pool of outside candidates, or, as in this case, laterally transferred. Requiring plaintiffs like Cones to establish that a similarly situated person had been promoted into the position would create a truly anomalous situation. An agency hiring an external candidate would be liable under Title VII only to other external candidates that it failed to hire. An internal candidate seeking a promotion to that position could never establish a prima facie case because the per-

son selected would not have been *promoted* to the position. Surely the *McDonnell Douglas* prima facie showing was not intended to create this absurd outcome.

Nothing in *Johnson v. Brock*, 810 F.2d 219 (D.C.Cir.1987), requires a different result. Although *Johnson*, a nonselection case, did include a citation to *Bundy*, the only part of the prima facie case the Court discussed was whether the plaintiff had "applied" for the position, an element of both the *Bundy* and *McDonnell Douglas* formulations. *Id.* at 225. *Johnson*, moreover, predates our clear statements in *Kolstad* and *Barbour* that plaintiffs in nonselection cases need show only that they applied for the vacant position and that a person not of their protected class was selected.

■ Having concluded that the district court erred in requiring Cones to show that a similarly situated white person had been promoted to the position, we consider whether Cones has established the elements of a prima facie case. It is undisputed that Cones is African American and that a white person was selected for the ASC Director position. HHS argues that because it never opened the ASC Director position for competition, Cones cannot establish either that he was qualified for the position or that he applied for it. We disagree on both counts.

First the qualification issue. Cones complains that HHS refused to consider him for the position despite his substantive qualifications. HHS does not challenge Cones' substantive qualifications, and for good reason: Cones served in the position for four months, received positive evaluations, and, according to abundant record evidence, was familiar with the job's duties. Indeed, at oral argument, HHS's counsel conceded that the testimony of every witness "is that [Cones] was substantively qualified had the position been advertised." Instead, HHS maintains, Cones cannot establish a prima facie case because he was not "technically" qualified insofar as he was not a GS–15.

If accepted, HHS's theory of "qualification" would open a potential loophole in Title VII. Agencies seeking to prevent minority employees from advancing to higher level positions could simply refuse to open those positions to competition and instead laterally transfer non-minorities. Agency employees would be unable to mount Title VII cases because none would be "technically" qualified. Nothing in Title VII or *McDonnell Douglas* supports such a counterintuitive result.

This does not mean that the relative qualifications of Cones and Dodd are irrelevant. To the contrary, their qualifications and the role those qualifications played in HHS's decision to select Dodd over Cones relate quite directly to the ultimate question that a jury will face: whether HHS discriminated against Cones when it selected Dodd for the position. For purposes of the prima facie case, however, it is sufficient that Cones has established that he was substantively qualified and that HHS selected a white person. *See St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 509–10, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (if "reasonable minds could *differ* as to whether a preponderance of the evidence establishes the facts of a prima facie case, then a question of fact *does* remain, which the trier of fact will be called upon to answer"); *Barbour*, 48 F.3d at 1276 (issue of qualification was question of fact for jury where "the jury reasonably could have determined, from the evidence before it ... that Barbour was qualified and that private sector experience was not an absolute prerequisite"); *Mitchell v. Baldrige*, 759 F.2d 80, 85 n. 3 (D.C.Cir. 1985) ("the initial responsibility of explaining the relative qualifications of the plaintiff and the selectee" lies with the defendant, not with the plaintiff as part of his prima facie case).

The Department's second argument—that Cones failed to apply for the job—requires little discussion. According to HHS, Cones cannot establish that he applied for the position because ASMB never opened the position to competition. Yet HHS concedes that Cones "applied" for the position in precisely the same way as did Margaret Dodd: he expressed his interest to Elizabeth James, the Deputy Assistant Secretary who assisted Apfel with management of ASC. If Margaret Dodd could get the position by expressing her interest to Elizabeth James, Cones can certainly establish a prima facie case by demonstrating that he did precisely the same thing. *See, e.g., EEOC v. Metal Service Co.*, 892 F.2d 341, 348 (3d Cir.1990) ("Courts have generally held that the failure to formally apply for a job opening will not bar a Title VII plaintiff from establishing a prima facie case of discriminatory hiring, as long as the plaintiff made every reasonable attempt to convey his interest in the job to the employer."); *Holsey v. Armour & Co.*, 743 F.2d 199, 208–09 (4th Cir.1984); *Grant v. Bethlehem Steel Corp.*, 635 F.2d 1007, 1016 (2nd Cir.1980).

### III

■ Turning to the remaining steps of the *McDonnell Douglas* analysis, we ask first whether HHS has rebutted the prima facie case's inference of discrimination by producing evidence of a legitimate, non-discriminatory reason for not selecting Cones. *See McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817. We agree with the district court that HHS met its burden. The agency offered evidence that it selected Dodd to serve as ASC Director because it was in the midst of downsizing, at least partially in response to Executive Order 12,839.

■ The only remaining issue, then, is whether Cones produced sufficient evidence from which a jury could infer that HHS's downsizing rationale was actually pretext for discrimination. *See McDonnell Douglas*, 411 U.S. at 804, 93 S.Ct. 1817; *Aka v. Washington Hospital Center*, 156 F.3d 1284, 1289 (D.C.Cir.1998) (en banc). We think that he has.

As an initial matter we must deal with the government's argument that Cones cannot establish discriminatory motivation because, although Apfel made the final decision to transfer Dodd, Cones alleged that it was James who harbored discriminatory intent. The government relies on *Hall v. Giant Food, Inc.*, 175 F.3d 1074 (D.C.Cir.1999), but then ignores several key distinctions between that case and this one. *See also Holbrook v. Reno*, 196 F.3d 255, 260–61 (D.C.Cir.1999). For one thing, unlike in both *Hall* and *Holbrook*, where the plaintiffs had offered "no evidence" to establish that the person with the alleged discriminatory animus "was even involved in the decisionmaking process," *Hall*, 175 F.3d at 1079, or "participated in" the adverse decision, *Holbrook*, 196 F.3d at 260, the record here is replete with evidence of James' involvement in the hiring decision. Asked about this at oral argument, HHS's counsel conceded, "[a]bsolutely, no question about it" that James was "actively involved" in the decision to transfer Dodd. More fundamentally, the plaintiff in *Hall* offered no evidence of pretext—his entire case rested on a single allegedly discriminatory comment by a person unconnected to the challenged employment decision. In contrast, Cones has offered sufficient evidence of pretext.

To begin with, as Cones points out, Apfel never asserted that Dodd was selected for the position because of downsizing or because she was a GS–15. Although Apfel testified that laterally transferring Dodd "was certainly consistent with the overall philosophy of hire from within, try to keep as few new GS–14s or 15s in the organization" and that downsizing "permeated how we did everything in the organization," he recalled no conversation in which downsizing was discussed as a reason to hire Dodd. Nor can we find any evidence in the record that Apfel considered whether laterally transferring Dodd would result in the elimination of her former position. If HHS really selected Dodd because it was downsizing and seeking to eliminate a GS–15 position, wouldn't Apfel have wanted to know whether the position that Dodd was vacating would be eliminated or whether he would have to hire another GS–15 to fill that position?

To be sure, were this Cones' only evidence, it might well be insufficient for a jury to conclude that HHS's downsizing rationale was not just pretext, but pretext *for discrimination. Aka*, 156 F.3d at 1291 ("in some instances ... the fact that there are material questions as to whether the employer has given the real explanation will not suffice to support an inference of discrimination"). Cones, however, has provided more. During the ten months immediately following the issuance of the Executive Order and preceding Dodd's transfer, the record shows that ASMB promoted three white GS–14s to GS–15. From this evidence, a jury could conclude that downsizing did not prevent HHS from promoting white GS–14s and that the Department's assertion that downsizing was the reason it did not consider Cones was a lie. As we said in *Aka*: "If the jury can infer that the employer's explanation is not only a mistaken one in terms of the facts, but a lie, that should provide even stronger evidence of discrimination.... The jury can conclude that an employer who fabricates a false explanation has something to hide; that 'something' may well be discriminatory intent." *Id.* at 1293.

HHS argues that the three white GS–14s were not similarly situated to Cones because they had been serving in acting capacities in the positions to which they were promoted. Perhaps so, but this explanation is hardly conclusive at this stage of the litigation. Although the evidence could well persuade a jury that no discrimination had occurred, a jury could just as easily infer that the alleged differences between Cones and the white GS–14s were irrelevant, or that they were themselves the product of discrimination since the Department had failed to permanently promote Cones to ASC Director when he was serving in an acting capacity.

The text of the Executive Order may also provide a jury with a basis for concluding that HHS's asserted concern with downsizing was pretext for discrimination, particularly when considered in combination with the promotion of the three white GS–14s. Although the Executive Order clearly requires HHS to reduce the number of upper-level positions, it does not differentiate between eliminating GS–14 and GS–15 positions. *See* Executive Order 12,839, 58 Fed.Reg. 8515. It provides only that "[a]t least 10 percent of the reductions shall come from the Senior Executive Service, GS–15 and GS–14 levels or equivalent." *Id.* HHS says it selected Dodd because by laterally transferring her and eliminating her former GS–15 position, the agency would be contributing to the Executive Order's downsizing goal. Possibly, but the agency could also have complied with the Executive Order by promoting Cones and leaving his former GS–14 position vacant. HHS may well be able to convince a jury, as it did the district court, that it reasonably interpreted the Executive Order to require it to reduce the number of GS–15s. The availability of a textually obvious alternative interpretation, however, is evidence from which a jury could infer that HHS deliberately misread the Executive Order to favor Dodd because it preferred not to promote an African American.

HHS points to evidence of actual downsizing, including that it promoted far greater numbers of employees prior to the issuance of the Executive Order. But Cones does not dispute that the agency was downsizing; the critical question is what motivated the Department's decision not to promote Cones—downsizing or discrimination. Because the record contains evidence that downsizing had not prevented the Department from promoting white GS–14s, a jury could conclude that downsizing was pretext for discrimination.

In the "Statement of Facts" portion of its brief, HHS mentions that in 1993 it selected three African Americans for GS–15 positions, two by promotion and one through initial hire. Yet HHS neither explains the significance of these personnel actions to its theory of the case nor refers to them anywhere else in its brief. Asked about this at oral argument, HHS counsel said, "I think this might be in error....because my recollection does not comport with that being a 1993 date." As HHS's post-hearing submission indicates, its brief in fact was mistaken. Only one African American was promoted or hired as a GS–15 in 1993, and, as Cones' counsel points out, that one African American was promoted by the Undersecretary of HHS, not by ASMB.

This is not a case in which the plaintiff "has created only a weak issue of material fact as to whether the employer's explanation is untrue, and there is abundant independent evidence in the record that no discrimination has occurred." *Aka,* 156 F.3d at 1291. Not only has Cones provided evidence that raises serious questions about the role of downsizing, but the Department has provided little if any record evidence that no discrimination occurred. As in *Aka,* this case ultimately turns on witness credibility. HHS's downsizing explanation presents a question of fact that is as "quintessentially one for the finder of fact" as was the employer's claim in *Aka* that the plaintiff was not "enthusiastic." *Id.* at 1298–99.

IV

■ This brings us finally to Cones' retaliation claim. He alleges that HHS refused to allow him to compete for the ASC Director position as retaliation for his having filed EEO complaints. In evaluating this claim, we again apply a burden-shifting mechanism: the plaintiff must first establish a prima facie case; if he meets that burden, the employer must articulate a legitimate non-retaliatory reason for its action; finally, the plaintiff has the ultimate burden of establishing that the reason asserted by the employer is pretext for retaliation. *See Berger v. Iron Workers*

*Reinforced Rodmen Local 201,* 843 F.2d 1395, 1423 (D.C.Cir.1988). The district court concluded that Cones had failed to establish a prima facie case of retaliation and that, even if he had, he failed to establish that HHS's non-retaliatory reason for laterally transferring Dodd was pretext for retaliation. Again we disagree.

We have described the elements of a prima facie case of retaliation as follows: the plaintiff must establish that he engaged in activity protected by Title VII, that the employer took an adverse employment action against him, and that the adverse action was causally related to the exercise of his rights. *See Paquin v. Federal Nat'l Mortgage Ass'n,* 119 F.3d 23, 31 (D.C.Cir.1997). HHS concedes that Cones engaged in protected activity when he filed informal and formal discrimination complaints, but it disputes Cones' assertion that he has established the other two elements.

■ As to the first element—whether HHS took an adverse employment action against Cones—it is undisputed that the Department refused to allow Cones to compete for the ASC Director position. HHS argues that only employment actions of "some significance," such as hiring, firing, or promotion, are actionable under Title VII. A decision not to advertise competitively a position, it asserts, is not actionable. But even assuming that only hiring, firing, and promotion decisions can give rise to Title VII liability, the crux of Cones' complaint is that refusing to allow him to compete for the promotion was tantamount to refusing to promote him. Furthermore, HHS's narrow definition of adverse employment action conflicts with our precedent. As we just recently recognized, "no particular type of personnel action [is] automatically excluded from serving as the basis of a cause of action" under Title VII, as long as the plaintiff is "aggrieved" by the action. *Brown,* 199 F.3d at 455; *see also Passer v. American Chemical Society,* 935 F.2d 322, 331 (D.C.Cir.1991) (action for retaliation under

parallel retaliation provision of the Age Discrimination in Employment Act is not limited "only to acts of retaliation that take the form of cognizable employment actions such as discharge, transfer or demotion"). Unable to dispute that its refusal to compete the position adversely affected Cones, HHS cannot legitimately contend that it took no adverse personnel action against him.

■ The Department next argues that Cones failed to demonstrate a causal connection between the filing of his discrimination complaint and the refusal to consider him for the ASC Director position. We agree with Cones, however, that given the circumstances of this case, the close temporal proximity of his discrimination complaints to the refusal to consider him for the ASC Director position is sufficient to establish a causal connection. *See Mitchell,* 759 F.2d at 86 ("The causal connection component of the prima facie case may be established by showing that the employer had knowledge of the employee's protected activity, and that the adverse personnel action took place shortly after that activity."). Elizabeth James, the Deputy Assistant Secretary who actively participated in the decision to fill the position non-competitively, knew that Cones had filed a discrimination complaint. Moreover, at the same time HHS was deciding not to open the ASC Director position for competitive promotion, an EEO counselor was investigating Cones' informal discrimination complaint, and Cones was filing formal complaints of both discrimination and retaliation.

Having determined that Cones has established a prima facie case of retaliation, we again consider HHS's evidence of a legitimate reason for transferring Dodd into the position—downsizing—and conclude that HHS has met its burden of production. But for the reasons stated above, we also conclude that Cones has produced evidence from which a jury could conclude that downsizing was pretext for retaliation. Like Cones' discrimination

claim, his retaliation claim raises genuine issues of material fact that on this record may not be resolved on summary judgment.

## V

The judgment of the district court is reversed, and the case is remanded for further proceedings consistent with this opinion.

*So ordered.*