# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

No. 02–5075          **September Term, 2003**
**00cv02442**

Filed On: September 3, 2003

LAYNE C. LATHRAM,
APPELLANT

v.

JOHN W. SNOW, SECRETARY OF THE DEPARTMENT OF TREASURY,
APPELLEE

**BEFORE**: GINSBURG, *Chief Judge*, and EDWARDS and GARLAND, *Circuit Judges*.

## *O R D E R*

It is, **ORDERED**, on the court's own motion, that the opinion filed August 1, 2003, be amended as follows:

Page 4, Line 27, delete "not of his protected class". Insert in lieu thereof: " . . .". Line 27 should now read:

someone . . . filled the position or the

Page 4, Line 30, delete the period after the parenthetical. Insert in lieu thereof: "; *see Stella v. Mineta*, 284 F.3d 135, 139 (D.C. Cir. 2002) (modifying fourth element)." Line 30 should now read:

2000) (citations omitted); *see Stella v. Mineta*, 284 F.3d 135, 139 (D.C. Cir. 2002) (modifying fourth element).

*Per Curiam*

**FOR THE COURT:**
Mark J. Langer, Clerk

BY:

Michael C. McGrail
Deputy Clerk

Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

### FOR THE DISTRICT OF COLUMBIA CIRCUIT

————

Argued March 11, 2003      Decided August 1, 2003

No. 02-5075

LAYNE C. LATHRAM,
APPELLANT

v.

JOHN W. SNOW,
SECRETARY OF THE DEPARTMENT OF THE TREASURY,
APPELLEE

————

Appeal from the United States District Court
for the District of Columbia
(No. 00cv02442)

————

*Robert C. Seldon* argued the cause and filed the briefs for appellant.

*Brian J. Sonfield*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Roscoe C.*

———

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

*Howard, Jr.*, U.S. Attorney, and *R. Craig Lawrence*, Assistant U.S. Attorney.

Before: GINSBURG, *Chief Judge*, and EDWARDS and GARLAND, *Circuit Judges*.

Opinion for the Court filed by GARLAND, *Circuit Judge*.

GARLAND, *Circuit Judge*: At issue on this appeal are plaintiff Layne Lathram's allegations of employment discrimination by the United States Customs Service, formerly an agency of the Department of the Treasury. Lathram challenges the district court's grant of summary judgment against her on three claims. Although we affirm the judgment with respect to one of those claims, we conclude that the district court erred in granting summary judgment against Lathram on the other two. Accordingly, we affirm in part, reverse in part, and remand the case for further proceedings consistent with this opinion.

I

On June 10, 1996, Lathram was hired by the Customs Service as a Public Affairs Specialist at the GS–13 grade level. Her duties included writing press releases, organizing public affairs programs, and publicizing Customs' interdiction of illegal drugs. When Lathram resigned from Customs in October 2000, she was still a GS–13. Shortly before resigning, Lathram sued the Secretary of the Treasury under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, contending that Customs had discriminated against her on the basis of her sex and retaliated against her for complaining of that discrimination.[1]

This appeal concerns three claims, contained in four counts of Lathram's amended complaint. Count II alleged that Customs discriminated against Lathram when it promoted

---

[1] All of the conduct charged in Lathram's amended complaint took place before many of Customs' responsibilities were transferred to the Department of Homeland Security under the Homeland Security Act of 2002, Pub. L. No. 107–296, § 411 *et seq.*, 116 Stat. 2135, 2178.

one of her male co-workers, Patrick Jones, from grade GS–13 to GS–14 and paid him a higher salary. Count IV alleged that Customs discriminated against Lathram by treating her less favorably than Dean Boyd, a male from outside the government, whom the agency hired directly into a GS–15 position with a higher salary than Lathram's. Finally, Counts V and VI alleged that Customs violated Title VII when it selected James Michie over Lathram for the GS–14/15 position of Director of the Press Operations Section of the Office of Public Affairs. Count V charged that the agency's choice of Michie constituted discrimination on the basis of sex, and Count VI charged that that decision (along with the contemporaneous reassignment of some of Lathram's duties) was intended as illegal retaliation for Lathram's complaints about the other alleged acts of discrimination.

After discovery, the defendant moved for summary judgment against Lathram on all counts, and Lathram moved for partial summary judgment in her favor. In a series of orders, the district court disposed of all of the issues in the case. The court granted the defendant's motion for summary judgment and denied Lathram's motion on all of the counts at issue on this appeal.[2]

## II

We review the district court's grant of summary judgment de novo. *Waterhouse v. District of Columbia*, 298 F.3d 989, 991 (D.C. Cir. 2002). Summary judgment is appropriate only if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A dispute about a material fact "is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party," *Anderson*, 477 U.S. at 248, and a moving party is "entitled to

---

[2] One portion of Count VI was voluntarily dismissed by the plaintiff, and it is not at issue in this appeal. The other two counts in the amended complaint, Counts I and III, were transferred to the Court of Federal Claims. Neither party appeals the transfer.

a judgment as a matter of law" if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). We must view the evidence in the light most favorable to Lathram, draw all reasonable inferences in her favor, and eschew making credibility determinations or weighing the evidence. *See Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000).

Title VII prohibits federal agencies from discriminating in employment on the basis of sex, 42 U.S.C. § 2000e–16, and from retaliating against employees for the assertion of their rights under Title VII, *see Forman v. Small*, 271 F.3d 285, 297 (D.C. Cir. 2001); *Ethnic Employees of the Library of Cong. v. Boorstin*, 751 F.2d 1405, 1415 & n.13 (D.C. Cir. 1985). Where, as here, the plaintiff has no direct evidence that the adverse employment actions of which she complains were caused by prohibited discrimination, we analyze the claim under the framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973). Under that framework, "the plaintiff must [first] establish a prima facie case of discrimination." *Reeves*, 530 U.S. at 142. To establish a prima facie case of discriminatory non-promotion, the plaintiff must show that: "(1) he is a member of a protected class; (2) he applied for and was qualified for an available position; (3) despite his qualifications he was rejected; and (4) either someone . . . filled the position or the position remained vacant and the employer continued to seek applicants." *Cones v. Shalala*, 199 F.3d 512, 516 (D.C. Cir. 2000) (citations ommitted); *see Stella v. Mineta*, 284 F.3d 135, 139 (D.C. Cir. 2002) (modifying fourth element).

Once the plaintiff establishes a prima facie case, the burden shifts to the defendant to " 'produc[e] evidence that the plaintiff was rejected . . . for a legitimate, nondiscriminatory reason.' " *Reeves*, 530 U.S. at 142 (citation omitted; alteration in original). If the defendant satisfies that burden, "the *McDonnell Douglas* framework—with its presumptions and burdens—disappear[s], and the sole remaining issue [is] discrimination *vel non*." *Id.* at 142–43 (citations and internal quotation marks omitted). At this point, to survive summary

judgment the plaintiff must show that a reasonable jury could conclude from all of the evidence that the adverse employment decision was made for a discriminatory reason. *See Aka v. Washington Hosp. Ctr.*, 156 F.3d 1284, 1290 (D.C. Cir. 1998) (en banc).

One way to do that is by showing that the nondiscriminatory explanation the defendant proffered for its decision was false. As the Supreme Court has explained, "[p]roof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive." *Reeves*, 530 U.S. at 147. In "appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose." *Id.* Thus, "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Id.* at 148; *see Aka*, 156 F.3d at 1290 (holding that "a plaintiff's discrediting of an employer's stated reason for its employment decision is entitled to considerable weight").[3]

In the following sections, we apply this framework to Lathram's three claims.

## A

Count II of Lathram's amended complaint alleged that Customs discriminated against her on the basis of her sex when, in November 1996, it promoted fellow employee Patrick Jones from a GS–13 position to the position of Public Affairs Specialist at the GS–14 grade level, and thereafter paid him a higher salary. The district court granted summary judgment for the defendant, holding that Lathram had failed to timely exhaust her administrative remedies, and that her claim failed

---

[3] The *McDonnell Douglas* framework, with some differences in the phrasing of the prima facie case, applies to Lathram's claim of unlawful retaliation as well. *See Morgan v. Federal Home Loan Mortgage Corp.*, 328 F.3d 647, 651 (D.C. Cir. 2003); *Holbrook v. Reno*, 196 F.3d 255, 263 (D.C. Cir. 1999).

to establish a prima facie case of discriminatory non-promotion. Because we affirm on the second ground, we need not reach the first.

Lathram's allegation that Customs violated Title VII by not promoting her to the GS–14 position is defeated by her failure to apply for that position. Lathram conceded that Customs had advertised the opening, that she had known about it, and that she neither applied nor expressed an interest in applying for it. Lathram Dep., J.A. at 304. As this court said in *Stella v. Mineta*, an element of a prima facie case of discriminatory non-promotion is that the plaintiff "*applied for* and was denied an available position for which he/she was qualified." 284 F.3d 135, 139 (D.C. Cir. 2002) (emphasis added); *see Cones*, 199 F.3d at 516. Although there is an exception to this requirement when such an application would have been futile, *see International Bhd. of Teamsters v. United States*, 431 U.S. 324, 365–66 (1977), Lathram offered no evidence to support the applicability of that exception and does not assert it on appeal. Thus, because Lathram failed to establish a prima facie case of discrimination with regard to the Jones promotion, summary judgment against her was appropriate.

Lathram's failure to apply for the GS–14 position also effectively dooms her claim of discriminatory pay. Although the government does not dispute that after the promotion it paid Jones more than Lathram, it asserts a nondiscriminatory explanation for the differential: each was paid according to the statutory schedule applicable to his or her civil service grade. This would not necessarily be a sufficient defense if Lathram had raised a genuine issue as to whether Jones' higher position was itself the result of unlawful discrimination. But, as just discussed, Lathram cannot make that claim because she never applied for the position. Under these circumstances, a reasonable jury could not conclude that the pay differential was a result of discrimination, and we therefore affirm the grant of summary judgment on this count.

## B

Count IV alleged that Customs violated Title VII when, in January 1999, the agency appointed Dean Boyd to the posi-

tion of Public Affairs Specialist at the GS–15 grade level. Customs filled the position on a Schedule A (noncompetitive) basis, without advertising its availability or permitting Lathram to apply.[4] Boyd was not employed at Customs at the time of his appointment, and had recently been laid off from a position as an editor of a privately published newsletter. Customs hired him to do public affairs work relating to the agency's drug interdiction programs. It is not disputed that, after Boyd was appointed, many of Lathram's responsibilities regarding those programs were transferred to him. Lathram maintains that all of Boyd's duties had previously been hers, while Dennis Murphy—the Assistant Commissioner for Public Affairs and Lathram's supervisor—testified that only some of Boyd's duties had previously been performed by Lathram.

Lathram asserts that Customs discriminated against her by transferring her duties to a less qualified man and assigning him a grade two levels higher than hers for the same work. The government counters with two related arguments: (1) that Lathram failed to make out a prima facie case of sex discrimination, because she was not qualified for the GS–15 position that was given to Boyd; and (2) that the agency had a legitimate nondiscriminatory reason for hiring Boyd, namely, that he was more qualified than she was to do Customs' anti-drug public affairs work.

The government's prima facie case argument itself has two parts. First, Customs argues that, as a GS–13 employee, Lathram was not eligible to jump directly into a GS–15 position without first stopping at GS–14—apparently because of a government-wide personnel regulation that the agency does not cite. Customs, however, does not dispute Lathram's contention that this regulation was subject to an exception that permitted such a jump if the employee had actually been performing the duties of a GS–14. *See* Appellee's Br. at 18. The government contends that there was no evidence that Lathram had been performing such work, but it is clearly

---

[4] *See generally* 5 C.F.R. §§ 6.1, 6.2 (describing Schedule A appointments). Boyd's position was later converted to one in the competitive civil service.

wrong about that. Lathram proffered her own testimony and that of other employees that she had been doing GS–14 level work before the Boyd promotion; the government's brief concedes that "[t]he evidence indicated that the official duties of [Patrick Jones'] GS–14 position were similar to those of [Lathram's] GS–13 position," Appellee's Br. at 2 n.2;[5] and the government's witnesses agreed that duties that Lathram had been performing as a GS–13 were transferred to Boyd after he became a GS–15. Indeed, the district court found it "undisputed that after his hiring, Boyd assumed all of Plaintiff's duties with regard to Customs' anti-drug enforcement program." *Lathram v. O'Neill*, No. 00–2442, slip op. at 11 (D.D.C. Nov. 15, 2001) [hereinafter Mem. Op.]. These facts not only rebut the government's claim that Lathram failed to demonstrate a prima facie case, but also provide grounds upon which a reasonable jury could conclude that the government's explanation for why it did not promote Lathram—that she was unqualified—was a pretext for discrimination. *See Reeves*, 530 U.S. at 148; *Aka*, 156 F.3d at 1294.[6]

The government further contends that the very fact that Customs selected Boyd under its Schedule A noncompetitive hiring authority proves that Lathram was not qualified for the position. The government offers the following syllogism:

---

[5] *See also* Defendant's Response to Interrogatories, J.A. at 290 (declaring that, as a GS–14, Mr. Jones "handles tasks identical to those of a GS–13 Public Affairs Specialist").

[6] Our opinion in *Cones* casts an additional shadow on Customs' argument that Lathram could not make out a prima facie case, even though she was substantively qualified, because her lack of time as a GS–14 rendered her technically unqualified for the GS–15 position. Addressing a similar claim in *Cones*, we warned that, if accepted, this "theory of 'qualification' would open a potential loophole in Title VII" because "[a]gencies seeking to prevent minority employees from advancing to higher level positions could simply" structure the positions in a way that made the employees "technically" unqualified. 199 F.3d at 518. In this case, for example, the government presented no evidence to justify its decision to make Boyd's position a GS–15, rather than a GS–14 for which Lathram was technically qualified.

(1) an agency cannot utilize Schedule A to hire outside the agency if it already has employees who are qualified for the new position, *see* 5 C.F.R. pt. 6; (2) an agency that wishes to rely on Schedule A must obtain approval from the Office of Personnel Management (OPM), by demonstrating that it is "not practicable" to fill the position through the competitive process, *see id.*; (3) Customs did utilize Schedule A; *ergo*, (4) Lathram could not have been qualified. Appellee's Br. at 17–18. As should be apparent, there are problems with the government's "*ergo*."

The most obvious problem is that the government offered no evidence that OPM actually approved Customs' use of Schedule A. But even if we were to assume that OPM did approve, the government offered no evidence that OPM made an independent determination that no internal candidate was qualified, or that it did anything other than accept Customs' own representations. This is not *ergo*; it is *ipse dixit*. Customs' argument amounts to nothing more than the assertion that Lathram was unqualified because it says she was. Once again, Customs' flawed attack on Lathram's qualifications both fails to defeat her prima facie case and provides a ground upon which a reasonable jury could conclude that the government's explanation was pretextual.

The government's claim that Customs had a legitimate nondiscriminatory reason for hiring Boyd for the GS–15 position—that he was more qualified than Lathram—fares no better. In its initial decision, the district court concluded that Lathram had raised a genuine issue of material fact on this question:

> The undisputed record shows that when he was hired, Boyd had no experience in public affairs or public relations. Rather, Boyd was an unemployed former editor and writer of a trade publication. In contrast, Plaintiff had significant experience in drug interdiction work and had served as Deputy Spokesman for the United States State Department's Bureau of African Affairs. Despite Boyd's dearth of experience, Defendant reassigned to Boyd Plaintiff's anti-drug enforcement program and cer-

tain other duties. *Such undisputed facts may give rise to an inference of discrimination.*

Mem. Op. at 12 (emphasis added; citations omitted). Subsequently, however, and without explanation, the district court reversed course and granted summary judgment for the defendant. *Lathram v. O'Neill*, No. 00–2442 (D.D.C. Dec. 26, 2001) (order granting partial recons.).

In our view, the court's first decision was correct. There was in fact evidence from which a reasonable jury could conclude that there was a wide and inexplicable gulf between the qualifications of Boyd and Lathram, and in such circumstances the jury could infer discrimination from the agency's choice of Boyd over Lathram. *See Aka*, 156 F.3d at 1294 ("If a factfinder can conclude that a reasonable employer would have found the plaintiff to be significantly better qualified for the job, but this employer did not, the factfinder can legitimately infer that the employer consciously selected a less-qualified candidate—something that employers do not usually do, unless some other strong consideration, such as discrimination, enters into the picture."); *id.* at 1299–1300 (reversing grant of summary judgment where there was "sufficient evidence in the record so that a reasonable jury could conclude that [plaintiff] was markedly more qualified" than the person who got the position).

With respect to Boyd, the district court was correct to note that the "undisputed record shows that when he was hired, Boyd had no experience in public affairs or public relations." Mem. Op. at 12. He was an unemployed former journalist, whose only relevant experience was as an editor of the *Drug Enforcement Report*—a private newsletter with a circulation of no more than 2000 subscribers—which another Public Affairs Specialist described as unimportant in the world of Customs public affairs. Mosher Dep., J.A. at 819.

Moreover, there is evidence from which a reasonable jury could have found that Lathram was substantially more qualified than Boyd for the job. At the time Customs hired Boyd, Lathram had already been working as a Public Affairs Spe-

cialist for three years. She specialized in and was responsible for drug interdiction issues, and, depending upon whose testimony the jury credited, much or all of Boyd's subsequent portfolio was work that Lathram had previously been performing. Lathram's former supervisor described her work as "excellent," Anthony Dep., J.A. at 271, and she was given high-profile assignments and commendations from superiors for her public relations successes, Lathram Decl., J.A. at 568–73.

In sum, because a reasonable jury could find that Lathram was not only qualified for the job but substantially more qualified than Boyd, and because such a jury could further conclude that Customs' assertions to the contrary were pretextual, the district court's grant of summary judgment on this count was in error and must be reversed.

## C

Finally, Lathram's amended complaint charged that Customs violated Title VII in July 2000, when it selected James Michie over her for the position of Director of the Press Operations Section in Customs' Office of Public Relations. At the time of his selection, Michie was working at a private organization, the Substance Abuse Mental Health Association. Count V of the amended complaint alleged that in selecting Michie, Customs discriminated against Lathram on the basis of her sex; Count VI charged that the agency's failure to select Lathram constituted illegal retaliation for her complaints about the other alleged acts of discrimination.

The position of Press Director was a new position, created along with two other new directorships as part of a restructuring instituted by Assistant Commissioner Murphy. Murphy opened the position of Press Director to competition from both inside and outside the government, and it was advertised at the GS–14/15 level. A panel interviewed the applicants and gave each a numerical score. Lathram received a "perfect" score of 100. After being granted a 5–point veteran's preference, Michie received a score of 101 and was given the position.

The district court granted summary judgment for the defendant on both counts, concluding that it was undisputed that Michie was the more qualified applicant. The court reached this conclusion because Michie's score was higher than Lathram's. On appeal, Customs cites the difference in scores as a legitimate, nondiscriminatory reason for its decision to favor Michie over Lathram. But both the district court and the government have misconstrued Lathram's claim. The plaintiff does not dispute the fact that *with* the veteran's preference Michie received a higher numerical score than she did; instead, she argues that she was the more qualified applicant without the preference, and challenges the decision that made the Press Director position one to which the veteran's preference applied in the first place.

At oral argument, the government conceded that, without the veteran's preference, Michie was less qualified than Lathram. That concession is inescapable. Without the preference he scored only 96, while Lathram received a score of 100. Moreover, for the key category of "[a]bility to manage and direct Press Operations in carrying out a national and international public information program," Michie received only a 3 ("good"), while Lathram received a perfect rating of 5 ("excellent"). *Compare* Michie Score, J.A. at 651, *with* Lathram Score, J.A. at 650; *see* Evaluation Criteria, J.A. at 646.

Lathram does not contend that there is anything discriminatory about veteran's preferences per se. That concession is well made in light of the Supreme Court's decision in *Personnel Administrator v. Feeney*, which noted that such preferences have "traditionally been justified as a measure designed to reward veterans for the sacrifice of military service, to ease the transition from military to civilian life, to encourage patriotic service, and to attract loyal and well-disciplined people to civil service occupations," and held that their application does not constitute sex discrimination in violation of the Fourteenth Amendment. 442 U.S. 256, 265 (1979). Rather, Lathram argues—and the government agrees—that the Veterans Employment Opportunities Act of 1998 only

guarantees "preference eligible" veterans the right to compete when an agency accepts applications from outside of its own workforce. *See* 5 U.S.C. §§ 3304(f), 3309(2); 5 C.F.R. § 335.106; *see also* Appellee's Br. at 27. The uncontradicted record evidence showed that Customs had a choice of how broadly to open the applicant pool for the Press Director position, and, in particular, that Assistant Commissioner Murphy was free to restrict the pool to those already inside the competitive service. Burton Dep., J.A. at 762.

Lathram's contention is that Murphy did not have a nondiscriminatory reason for going outside the agency to hire Michie, and hence for creating a situation in which veteran's preferences would be relevant. First, she notes that she— who scored a perfect 100 in the ratings—was already employed by the agency and more qualified for the position. And she correctly points out that the government offered no explanation for opening the competition as wide as it did.

Second, Lathram also rightly argues that, not only was Murphy's decision to go outside the agency unexplained, but there was evidence from which a jury could find it inconsistent with the application process that Customs established for the two other new directorships that were created at the same time. Such an unexplained inconsistency can justify an inference of discriminatory motive. *See, e.g., Miller v. Fairchild Indus., Inc.*, 885 F.2d 498, 506 (9th Cir. 1989); *cf. Cones*, 199 F.3d at 519–20 (holding that a jury could have concluded that the agency's explanation for not promoting the African–American plaintiff from GS–14 to GS–15, downsizing, was inconsistent with its decision to promote three white GS–14s to GS–15 and hence a pretext for discrimination). The competitions for both of the other directorships were restricted, and the positions were awarded to males who did not have to compete with outsiders who had veteran's preferences. The district court did not address this point at all, and while the government contended at oral argument that the other two directorships were merely exceptions to the norm of hiring from outside the agency, it conceded that there was no

evidence in the record to support that contention.[7]

In sum, although there is no dispute that Michie scored higher than Lathram with the benefit of his veteran's preference, the government offers no explanation for why Customs decided to structure the application process for the position in a way that made Michie's preference applicable, while Lathram offers evidence that the process for similar positions was structured so that it would not have been. In these circumstances, a reasonable jury could reject as pretextual Customs' explanation for awarding the position to Michie over Lathram. Hence, summary judgment on Lathram's discrimination claim was erroneous. And because the court's acceptance of that same explanation was also the basis for its grant of summary judgment on Lathram's retaliation claim, that decision was erroneous as well. *See supra* note 3.

## III

Although the district court properly granted summary judgment on Count II of the amended complaint, the grant of summary judgment for the defendant on Counts IV, V, and VI was in error. Accordingly, the judgment of the district court is affirmed in part and reversed in part, and the case is remanded for further proceedings consistent with this opinion.

*So ordered.*

---

[7] The government's brief also seeks to explain Customs' decision to keep the hiring for the other two directorships inside the agency on the ground that these were in-house candidates who were already doing the work. But there was also evidence that there was an in-house candidate who was already doing the work of the Press Director—Lathram herself. Accordingly, the government's argument does not negate a genuine dispute as to whether the Press Director position was in fact treated consistently with the others. *See Cones*, 199 F.3d at 519–20 ("[The agency] argues that the three white GS–14s were not similarly situated to Cones because they had been serving in acting capacities in the positions to which they were promoted. Perhaps so, but this explanation is hardly conclusive at this stage of the litigation [because] a jury could just as easily infer that the alleged differences … were irrelevant . . . .").